In the Matter of CITY OF NEW YORK et al., Petitioners, v STATE DIVISION OF HUMAN RIGHTS, on Complaint of LAWRENCE A. TEELE, Respondent.

First Department, February 22, 1990

## APPEARANCES OF COUNSEL

*Goldi S. Juer* of counsel *(Larry A. Sonnenshein* on the brief; *Peter L. Zimroth, Corporation Counsel,* attorney), for petitioners.

*Sheila A. Donohue* of counsel *(Lawrence Kunin,* attorney), for respondent.

## OPINION OF THE COURT

KUPFERMAN, J. P.

Petitioners, the City of New York and the New York City Police Department, seek to review, pursuant to section 298 of the Executive Law, a determination of the State Division of Human Rights, dated March 7, 1988, which found that they had unlawfully discriminated against the complainant by disqualifying him for the position of police officer on the basis of a disability which did not prevent him from performing the duties of the position in a reasonable manner, ordered the petitioners to restore the complainant to eligibility for appointment as a police officer and awarded him $10,000 in damages for hurt, humiliation and mental anguish.

Inasmuch as the determination was made after a public hearing, pursuant to section 297 (4) of the Executive Law, the matter was transferred to this court, in accordance with CPLR 7804 (g), by order of the Supreme Court, New York County (Shirley Fingerhood, J.), entered June 22, 1988.

In 1978, the complainant took and passed the examination for police officer. In April 1981, after apparently passing

psychological and physical agility tests and undergoing a physical examination, he was notified by the New York Police Department that he was being held for orthopedic review because of a condition in his left knee. He reported for a further physical examination and X rays on May 1, 1981, after which he was notified that he was not medically qualified to perform the duties of a police officer due to the left knee condition. In September, he appeared before the Joint Appeal Board, which confirmed his rejection. The Board determined that the complainant had undergone a medial meniscectomy (removal of torn cartilage from the knee joint) six years earlier and that while there was a minimal atrophy of the quadriceps, the diagnosis was early osteoarthritis.

In October 1981, complainant appealed that determination to the City Civil Service Commission, which affirmed the medical disqualification based on medical standard No. 51: "Significant lack of function of hip, knee, ankle, foot, or toes, rejects."

The complainant then filed a verified complaint with the State Division of Human Rights on March 15, 1982, charging petitioners with an unlawful discriminatory employment practice, pursuant to section 292 (21) of the Executive Law, the Human Rights Law, which reads as follows: "The term 'disability' means (a) a physical mental or medical impairment resulting from anatomical, physiological or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment, provided, however, that in all provisions of this article dealing with employment, the term shall be limited to disabilities which do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held."

The Division determined that it had jurisdiction and that probable cause existed to believe that petitioners had engaged in an unlawful discriminatory practice. Accordingly, a public hearing was held, pursuant to section 297 (4) (a) of the Executive Law.

The facts developed at the hearing showed that the complainant injured his knee playing basketball in high school, leading to water on the knee. After a second injury, when he tore cartilage while playing baseball, he underwent surgery

and a program of physical therapy. His treating physician was satisfied that recovery was complete. He resumed his involvement in sports and, after high school, loaded packages in a department store shipping department, worked as a museum guard, was a custodian in a day care center and was employed as a production supervisor on a loading dock while working toward his degree from John Jay College.

It became clear that while there was some question as to present inability, the real issue was as to the future, as pointed out by the police department medical people.

The complainant presented reports of three examining physicians. One stated that there was no residual disability, one indicated evidence of degenerative arthritic changes and one stated that complainant could perform duties as a police officer and not be handicapped by the previous surgery on his left knee.

The two physicians for the New York Police Department indicated a predisposition to future disability in what is a high stress position, and one went further to give the opinion that there was a high probability that the complainant would not be able to complete his training at the police academy.

The Hearing Examiner found discrimination and that the condition was no impediment to performing in a reasonable manner. *(See,* Executive Law § 292 [21].) The finding was adopted by the Commissioner.

■ It is clear that the scope of the judicial review under the Human Rights Law is confined to consideration of whether the Division's determination is supported by substantial evidence in the record. *(Matter of State Div. of Human Rights [Granelle],* 70 NY2d 100, 106.)

In view of the conflict in the medical analysis and the evident ability of the complainant to overcome the supposed handicap, it is clear that there is a rational basis for the conclusion adopted by the Commissioner that the complainant be restored to eligibility for appointment.

■ The other aspect of the determination, being the award of $10,000 in damages for hurt, humiliation and mental anguish, poses a different question. While the complainant testified that he was angry as a result of his disqualification, there is no substantiation of his claims of hurt, humiliation and mental anguish. Moreover, there was some basis for the conclusion by the police department that the complainant should be disqualified. Although the Commissioner has broad

discretion in setting the amount of compensatory damages for mental suffering *(see, Batavia Lodge No. 196, Loyal Order of Moose v New York State Div. of Human Rights,* 35 NY2d 143) unless it is to be concluded that in every case of unlawful discrimination there must be an award of damages, there is an insufficient basis for such an award in this matter.

Accordingly, the petition of the City of New York and the New York City Police Department should be granted only to the extent of annulling the $10,000 award for hurt, humiliation and mental anguish, and otherwise the petition should be denied, the proceeding dismissed and the Division's determination, dated March 7, 1988, should be confirmed, without costs.

MILONAS, KASSAL and ELLERIN, JJ., concur.

Determination of respondent dated March 7, 1988, insofar as it awarded $10,000 to complainant, is annulled, and the determination otherwise confirmed, without costs and without disbursements.