*509 OPINION OF THE COURT
Alexander, J.
Gregory Antonsen, a probationary police officer, has been dismissed from the New York City Police Department because he has Crohn’s disease. Although the disease is currently in remission, the Police Commissioner contends that because there is a reasonable expectation that the disease will recur, rendering Antonsen unfit to perform the duties of a police officer, his dismissal did not violate the Human Rights Law. The Appellate Division unanimously affirmed Supreme Court’s contrary conclusion granting Antonsen’s petition and directing his reinstatement. We granted leave to appeal to the Police Commissioner and the City of New York (collectively, the Commissioner).
In July 1985, Gregory Antonsen, who then was just short of his 24th birthday, after successfully completing the relevant tests, was appointed to the New York City Police Department and entered the Police Academy. He was graduated from the Academy in December 1985, in the top 5% of his class. In August 1985, while still at the Academy, Antonsen developed abdominal pains and an onset of diarrhea. He was placed on medication but the symptoms persisted although they apparently were not disabling.
*510 Following his graduation from the Police Academy, Anton-sen was assigned to the Neighborhood Stabilization Unit for a six-month period. While a member of this unit he worked out of various precincts throughout New York City as part of his orientation. His duties included foot patrol, during which he engaged in several foot chases of criminals. In one of these chases he subdued an individual who was wielding a knife. He also made a number of felony drug arrests and was rated by his supervising sergeant as a "superb police officer” whose medical condition did not interfere with the performance of his police duties. In July 1986, Antonsen was assigned to regular patrol duties in a South Bronx precinct. He developed pains in his leg and in his side and was hospitalized. He was diagnosed with Crohn’s disease.
Crohn’s disease is a form of inflammation which may affect any part of the gastrointestinal tract. The cause of the disease is unknown and to date, no complete cure has been found. There is record evidence that many of the most common symptoms of the disease — mild diarrhea, abdominal cramps and fever — can be treated with medication as well as through dietary control. Surgical intervention, however, is sometimes indicated.
In August 1986, Antonsen underwent surgery to remove the diseased portion of the small intestine. The surgery was successful. Antonsen was placed on limited duty in September 1986 and returned to full duty on October 1, 1986. He submitted to a routine medical examination administered to all probationary officers as they approach the end of their probation. Upon learning of the recent surgery, the examining physician referred Antonsen’s case to the department’s Health Services Division. On December 24, 1986, Antonsen’s probationary period was extended and he was placed on limited duty pending review of his status.
Dr. Gary Schwartz, a gastroenterologist, examined Antonsen in February 1987. After reviewing Antonsen’s past history,[1] Dr. Schwartz filed a report to the chief surgeon of the Health Services Division noting that Antonsen was not on any medication, appeared fit and healthy, was gaining weight and that with the exception of mild inflammation within the anal canal, appeared to be doing well. Schwartz reported that he *511 had advised Antonsen, however, that he could not predict when and if there would be a recurrence of the disease and that for patients with Antonsen’s medical problem there was a 15-20% recurrence rate. He concluded that "at this time [Antonsen] appears fit and able to be employed.”
However, Dr. Eugene Antelis, a Health Services Division staff surgeon who did not examine Antonsen, recommended that Antonsen be dismissed. This recommendation was based on his review of the hospital record of the 1986 surgery, the report of Dr. Schwartz and Dr. Lawrence Kryle, Antonsen’s treating physician and consultation with three gastroenterologists. These three gastroenterologists were unanimously of the opinion that the disease might recur.[2] Dr. Antelis’ recommendation was accepted and Antonsen was dismissed from the force in May 1987.
Antonsen challenged this dismissal in a CPLR article 78 proceeding and sought reinstatement. In support of his petition Antonsen submitted the results of an examination by Dr. Maurice J. Zimmerman, a gastroenterologist. Dr. Zimmerman found no evidence of recurrent Crohn’s disease and noted that even in the unlikely event there was a recurrence of Anton-sen’s Crohn’s disease, it could be brought under control by medication.
Supreme Court granted the petition to the extent of vacating the determination dismissing Antonsen from the force, remanding the matter to the Commissioner with directions that a physical examination be conducted to determine whether Antonsen has any "physical, mental or medical condition which prevents him from performing the activities of a police officer in a reasonable manner,” and directing that a determination be made de novo as to Antonsen’s appointment to the police force.
Antonsen was thereafter examined by Dr. Ernest R. Pitman, an honorary police surgeon. Although Dr. Pitman found Antonsen’s Crohn’s disease to be in remission and that he was clinically well and able to perform full activity, he recommended that Antonsen not be reinstated because it "seems there is substantial risk of recurrent Crohn’s disease” although "it is impossible to state in an individual case whether a recurrence or not will happen.”
*512 After reviewing Dr. Pitman’s report and Antonsen’s medical records and certain medical literature, the supervising chief surgeon of the Health Services Division, Dr. Robert E. Thomas, recommended that Antonsen not be reappointed. In his recommendation he noted that in one study reported in Cecil, Textbook of Medicine (1982), 50% of the people who underwent surgery similar to Antonsen’s "had exacerbations within five years”, and that in another study conducted by Mt. Sinai School of Medicine, which sought to examine the quality of life of Crohn’s disease patients after surgery, 50% of those whose disease was limited to the small intestine and who underwent resective surgery, had recurrence within 5 to 10 years of their first operations. He also noted a Danish study which he did not specifically identify, that "predicted that up to 20% of the patients would retire, unable to work, within 10 years of disease onset.” Dr. Thomas concluded that there was a substantial risk of recurrence in petitioner’s case because of the presence of inflammation a year after the surgery and because of the type of surgery performed in 1986. He opined that symptoms may recur at any time and that Antonsen may not only become disabled and unable to work, but may also become incapacitated by severe pain and diarrhea. Antonsen was not reinstated and a second article 78 proceeding was commenced.
Supreme Court again ordered Antonsen’s reinstatement with back pay, concluding that the Commissioner’s determination lacked a rational basis since the conclusion that there was a reasonable expectation that Antonsen would be unable to perform the duties of a police officer in the future was based solely upon statistical data that was inconclusive and therefore was purely speculative. Supreme Court found the record "barren of any satisfactory medical evidence to support a reasonable expectation that Antonsen, in light of his particular medical history and present condition, will become unfit to reasonably perform the duties of a police officer”.
In a brief memorandum the Appellate Division unanimously affirmed, stating that "[u]nder the circumstances here present, to deny petitioner his appointment is a violation of his rights” (161 AD2d 378, 379, citing Matter of City of New York v State Div. of Human Rights [Teele], 154 AD2d 56). For the reasons set forth below, we affirm.
We note at the outset that although the police department may terminate a probationary employee without a hearing *513 and without any stated reason, such termination may not be based on reasons prohibited by law (see, Matter of Miller v Ravitch, 60 NY2d 527, 531; Matter of Tálamo v Murphy, 38 NY2d 637, 639). The Human Rights Law (Executive Law § 296 [1] [a]) prohibits an employer from discriminating against an employee or job applicant because of a disability and renders such discrimination unlawful. The statute defines "disability” as a physical or medical impairment, a record of such an impairment or a condition regarded by others as an impairment.
Given this statutory definition, there is no question but that Antonsen suffers from a "disability”. In order to avoid the interdiction of the statute and to constitute a valid basis for refusing to hire a prospective employee or to discharge one already hired, the disability must be such as to "prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held” (Executive Law § 292 [21]). Thus, it is no longer sufficient, as it was prior to the 1979 amendment to the Executive Law, that the impairment merely be in some way related to the duties the person was required to perform in connection with the position sought (see, Matter of Westinghouse Elec. Corp. v State Div. of Human Rights, 49 NY2d 234; State Div. of Human Rights [Ghee] v County of Monroe, 48 NY2d 727). Rather the test is an "individualized one” pursuant to which it must appear that the employee’s physical condition precludes being reasonably able to perform the duties and activities the position requires, otherwise the disability is irrelevant to the job and can form no basis for denying the employee the position (Matter of Miller v Ravitch, 60 NY2d 527, 532, supra). Put differently, the "particular disability must be such that it prevents the particular individual from performing in a reasonable manner the particular activities involved in the job or occupation before an employer is permitted to terminate the individual employee” (Matter of Miller v Ravitch, supra, at 534 [Jasen, J., concurring]).
At the time of his dismissal Antonsen’s disability did not interfere with his ability to reasonably perform the duties of a police officer. The record clearly shows that all the specific medical information available to the Commissioner established that Antonsen’s Crohn’s disease was in remission and had been since the surgical procedure he underwent in 1986. Each of the doctors who examined him — Dr. Zimmerman, Dr. *514 Schwartz and Dr. Pitman — concluded that he was clinically well and able to perform full activity.
Each doctor who examined Antonsen acknowledged that Crohn’s disease recurs but none could predict whether Anton-sen’s Crohn’s disease would recur. Dr. Zimmerman indicated that there "may be a fifteen to twenty percent recurrence rate within a five to ten year time frame” in patients with this type of disease. However, it was his opinion that in the "unlikely event that [Antonsen’s] Crohn’s disease should recur, it may be brought under control by the use of antibiotics and other treatment”. Dr. Schwartz similarly could not predict whether Antonsen’s Crohn’s disease would recur but also indicated that there was a 15-20% recurrence rate "in patients with his problem”. Although Dr. Pitman found Anton-sen to be "clinically well and able to perform full activity”, he concluded "it seems that there is a substantial risk of recurrent Crohn’s disease in Mr. Gregory Antonsen’s case”. Dr. Pitman’s conclusion apparently was based on statistics taken from an article by Dr. Adrian Greenstein in Bockus, Gastroenterology (4th ed) in which Greenstein "reviewed the subject of post operative recurrence with an extensive list of references.”
The gravamen of the Commissioner’s argument is that because there is a reasonable expectation that Antonsen’s Crohn’s disease will recur, his dismissal was lawful and was consistent with the police department’s medical guideline.[3] This "reasonable expectation” that Antonsen’s Crohn’s disease will recur, however, is based entirely upon various statistical studies that indicate that the rate of recurrence may vary from as low as 13.6% to as high as 50% of patients who have been affected with Crohn’s disease. Moreover, the specific statistical data relied upon by Dr. Pitman and Dr. Thomas, while indicating varying rates of recurrence or exacerbation of Crohn’s disease, offers no support for the conclusion that any such recurrence or exacerbation Antonsen might experience would be debilitating to the extent that he could not reasonably perform the duties of a police officer. Significantly, the *515 Danish report relied upon by Dr. Thomas concluded that there is no difference between patients with Crohn’s disease and individuals in a control group (patients with acute diseases of less than 28 days duration other than Crohn’s disease) in regards to the occurrence of familial problems and the level of recreational, social and employment activity (Sorensen, Olsen & Binder, Life Prospects and Quality of Life in Patients with Crohn’s Disease, 28 Gut 382 [1987]; see also, Gazzard, The Quality of Life in Crohn’s Disease, 28 Gut 378 [1987]).
In Matter of State Div. of Human Rights (Granelle) (70 NY2d 100, 107) we stated that "[e]mployment may not be denied based on speculation and mere possibilities, especially when such determination is premised solely on the fact of an applicant’s inclusion in a class of persons with a particular disability rather than upon an individualized assessment of the specific individual.” (See also, Matter of Miller v Ravitch, supra.) We noted that the prediction that Granelle would suffer low back disability because of his spondylolisthesis, based solely on statistical probability, was mere speculation.
Here, the Commissioner’s conclusion that Antonsen should be dismissed is based entirely on statistics that indicate varying percentages of Crohn’s disease patients who have undergone resective surgery experience recurrence or exacerbation of their disease. One of the studies on which the Commissioner relied concludes, however, that as many as 70% of such patients were free of all symptoms at the time of the interview (Gazzard, The Quality of Life in Crohn’s Disease, 28 Gut 378, 379 [1987]). Only the Danish study referred to in Dr. Thomas’ report provides any information as to the extent of debilitation resulting from the recurrence of symptoms (up to 20% became unemployed after 10 years). Yet that same report indicates that there is no marked difference in employment experience between Crohn’s patients and the controls (see, Sorensen, Olsen & Binder, Life Prospects and Quality of Life in Patients With Crohn’s Disease, op. cit.). Moreover, of the employed patients with Crohn’s disease, 72% had less than two weeks sick leave during the year preceding the study, a figure comparable to the control group (id.).
Thus we conclude the medical evidence and statistical data in this record are insufficient to support the Commissioner’s determination that there is a reasonable expectation that Antonsen will be unable to perform the job of police officer now or in the future (Matter of State Div. of Human Rights *516 [Granelle], supra). Notwithstanding the general statistical data suggesting that symptoms of Crohn’s disease might recur, nothing in this record supports the conclusion that any recurring symptoms, many of which are treatable, would be so disabling as to prevent petitioner from reasonably performing the duties of a police officer (cf., Matter of Bayport-Blue Point School Dist. v State Div. of Human Rights, 131 AD2d 849 [complainant with multiple sclerosis medically fit to drive school bus since symptoms of the disease appear gradually and would respond quickly to medication]; Matter of Carrero v New York City Hous. Auth., 116 AD2d 141 [respondent failed to consider that assuming petitioner’s condition existed, it could be monitored to prevent the sudden onset of renal distress]). Because the statistical data relied on are inconclusive and are not adequately individualized so as to satisfactorily demonstrate that the "particular disability [will be] such that it [will] prevent[] the particular individual from performing in a reasonable manner the particular activities involved in the job [of police officer]” (Matter of Miller v Ravitch, 60 NY2d, supra, at 534 [Jasen, J., concurring]), we need not consider "whether, a reasonable expectation that [petitioner] will be unfit to continue to perform the duties of a police officer, if established, would be a valid basis for employment disqualification under the Human Rights Law.” (Matter of State Div. of Human Rights [Granelle] supra, at 107, n 2; see, Civil Service Law § 50 [4] [b].)
Finally, the argument advanced by the Commissioner that there may be fiscal consequences attendant upon the possibility that Antonsen’s Crohn’s disease may cause him to take excessive sick leave or compel him to retire on a disability pension is fully answered by our decision in State Div. of Human Rights (McDermott) v Xerox Corp. (65 NY2d 213, 218).
We conclude that the Commissioner failed to demonstrate that Antonsen’s disability was such as would preclude him from being able to reasonably perform the duties and activities required, and thus, Antonsen’s dismissal violated the Human Rights Law.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.

. In 1983 Antonsen underwent surgery for an abscessed anal ulcer and fistula, a condition considered to be a harbinger of Crohn’s disease. In 1985 a "fistula in ano” was excised.

. These three gastroenterologists, none of whom had examined Anton-sen, opined respectively that the rate of recurrence ranged from 50%, 25% or 20-50%.

. It is noted that in its answers to the article 78 petitions, respondent Commissioner asserted that Antonsen’s dismissal was in conformity with police department medical standards for exam No. 4061 (Antonsen’s exam) which provide in pertinent part for the disqualification if "an individual candidate’s condition or significant medical history * * * poses an obstacle to current or reasonably expected ability to perform the job. A candidate may be rejected who has a [pjresence or significant history of ulcerative colitis or Crohn’s disease.”