OPINION OF THE COURT
Andrew V. Siracuse, J.
Petitioner in this CPLR article 78 proceeding was hired in January 1995, as a probationary firefighter. He was discharged several months later, while still on probation, after he informed the City that he had moved to the suburban Town of Gates. Petitioner’s discharge followed an investigation — triggered by his notice of a new address — that revealed that he had moved out of the City in November 1994, after he took and passed the civil service examination but two months before his hiring, and that he had continued to give his Rochester address to Fire Department and civil service officials for some six months.
Petitioner was, it appears, competent at his job. In its answer the City states that he was properly discharged for failure to complete his probation. The reasons for this failure are not given, and from the record as a whole it appears that the City had no reason to discharge him that did not arise from the residency question and petitioner’s statements about his address.
The City advances three justifications for discharging petitioner: first, that as a probationary employee he was dischargeable at will; second, that he was subject to removal under Civil Service Law § 50 (4), which permits the commission to refuse to certify as eligible one who "(f) * * * has intentionally made a false statement of any material fact in his application”,[1] and finally, and most centrally for the *580 purposes of the present action, that petitioner was not reachable in the civil service list once he changed residence. The City admits that Public Officers Law § 3 (4) forbids making City residence a requirement for appointment, continued employment, or promotion. It relies instead on Civil Service Law § 23 (4-a), which it interprets as allowing cities to grant a hiring preference to residents. Given the number of eligible City residents on petitioner’s list, he was no longer reachable on the list once he moved out of the City; and his reachability at the time of permanent appointment was a condition of his probationary position.
The scope of judicial review of a probationary firefighter’s or police officer’s discharge is not broad, but it is not negligible, either: "although the police department may terminate a probationary employee without a hearing and without any stated reason, such termination may not be based on reasons prohibited by law (see, Matter of Miller v Ravitch, 60 NY2d 527, 531; Matter of Talamo v Murphy, 38 NY2d 637, 639)” (Matter of Antonsen v Ward, 77 NY2d 506, 512-513). Although couched in negatives, Matter of Talamo v Murphy (supra) outlines certain of the improprieties that can support judicial review: "The employment of a probationary appointee may be terminated at the end of the probationary term without a hearing and without reasons being stated and, in the absence of any allegation or demonstration that the termination was because of constitutionally impermissible reasons or prohibited by statute or policies established by decisional law, courts will not interfere with the discretion of the appointing officer unless the action complained of was arbitrary and capricious” (38 NY2d, at 639 [citations omitted]). Thus, the fact that petitioner was a probationary employee, standing alone, would not allow his discharge if it was based on standards prohibited by statute or decisional law. His contention that he was the victim of a residence requirement prohibited by statute is properly grounds for review. So, too, is his claim that he was dismissed for a "stigmatizing” reason without a due process hearing.
At oral argument the City said little on the residency issue, stressing instead the other alleged basis for its discharge: that petitioner was unfit to act in the trusted capacity of firefighter because he had misrepresented his address. This was, in the opinion of respondent Fire Chief David Griffith, a "serious misrepresentation” which left him with "no confidence in the veracity of petitioner’s [future] reports” (Griffith affidavit ¶ 7).
The City’s position on this point, though, is a double-edged sword. It claims, on the one hand, that petitioner was right *581 fully discharged, after being given an opportunity to respond as Civil Service Law § 50 (4) requires, because of a pattern of misrepresentations that left his superiors unable to trust him. At the same time the City argues that his discharge was not for a reason that would "stigmatize” him — that is, damage his name and reputation in such a way that his future employment might be affected — and that he is therefore not entitled to a due process hearing in order to clear his name[2] (see generally, on this subject, Matter of Hill v Edelman, 92 Misc 2d 485).
While the alleged misrepresentations do not rise to the seriousness of the brutality charges at issue in Matter of Hill v Edelman (supra), they are certainly "stigmatizing” enough so that they might reasonably be expected to affect petitioner’s future employment. An uncontested determination that one is unworthy of trust is a serious matter; its harm to one’s reputation is incalculable. A hearing on the claim would ordinarily be required.
Rather than remit the matter for a hearing, however, the court now turns to the issue of the residency requirement. This is particularly germane because petitioner’s alleged misrepresentations all concern his residence, and misrepresentations that justify discharge under the Civil Service Law must be as to a "material fact”. In order for residency to be a material fact it must be a factor properly taken into account by the City, the Fire Department, and the Civil Service Commission. For the reasons which follow the court finds that it is not, and that the City’s practice of preferring residents cannot be supported.
Two statutes address the issue of residency requirements for firefighters, and the relationship between the two has not been treated in any reported decision. Public Officers Law § 3 (4) states: "Except as otherwise provided in subdivision nine of this section, persons heretofore or hereafter employed in the paid fire department of a city, town, village or fire district shall not be deemed to be holding a civil office or a local office within the meaning of this section and the provisions of this section shall not apply to such persons. The provisions of any general, special or local law, city or village charter, code or ordinance, or any rule or regulation requiring a person to be a resident of the political subdivision or municipal corporation of the state for which he shall be chosen or within which his official functions are required to be exercised shall not apply to the ap *582 pointment or continuance in office of any such person so employed, if such person resides in the county, or one of the counties, in which such political subdivision or municipal corporation is located”. Civil Service Law § 23 (4-a) appears to contradict, or at least mitigate, the Public Officers Law’s prohibition on requiring firefighters to be residents of the city proper: "4-a. Residence restrictions for local positions. The state civil service department or municipal commission having jurisdiction over positions in a city or civil division may require that candidates for examination for appointment to any such positions be residents of such city or civil division, or residents of the county or judicial district in which such city or civil division is located, or of any reasonable combination of political subdivisions both in and outside of New York state contiguous to such city or civil division or contiguous to the political subdivision in which such city or civil division is located. An appointing authority of a department or agency of a city or civil division may require that eligibles who are residents of such city or civil division shall be certified first for appointment, provided, however, no such preference shall be given on appointments from promotion lists. Upon exhaustion of the list of such resident eligibles, certifications shall be made from the whole eligible list. This subdivision shall not be deemed to supersede any general or special law pertaining to residence qualifications of local officers or employees; provided, however, that any permanent employee who has been suspended or demoted from a position and is on a preferred list for reinstatement, shall not be barred from reinstatement solely on the basis of residency requirements established subsequent to such suspension or demotion, in the event the employee does not meet such residence qualifications but, nonetheless, was originally properly appointed.” The City has for decades relied upon the first three sentences of this section in order to justify its practice of preferring City residents over out-of-City county residents, and indeed the section appears to grant exactly that permission. Yet this interpretation leaves several questions. First of all, the sentence, "This subdivision shall not be deemed to supersede any general or special law pertaining to residence qualifications of local officers or employees” ought to refer to the Public Officers Law as well as to any other; the City’s interpretation denies this. Second, if the second sentence in the section allows preferences, the first sentence would similarly allow residency to be a requirement at least for hiring — in clear contradiction to the other statute.
This is, in fact, the way the City has treated the matter. Chief Griffith has stated that "Because of the large number of *583 City residents who have attained high scores on the Civil Service exams for firefighters, the practical effect of this residency preference has been that only persons who are City residents have been hired as recruit firefighters in recent years” (Griffith affidavit ¶ 2). And the announcement for the civil service test which petitioner took — at a time when he was a City resident— states "Residence within the limits of the City of Rochester is required as of the date of any and all parts of the examination * * * Additionally, residency is required on the date of appointment.” The effect of the City’s interpretation of Civil Service Law § 23 (4-a) has thus been to nullify the effects of Public Officers Law § 3 (4), at least until the firefighter completes his or her probationary period. Thereafter, he or she may move wherever in the county he or she wants.
This is an unsatisfying state of affairs, and violates one of the first rules of statutory interpretation: that a statute must be interpreted so as to give effect to all of its provisions. Yet there are even stronger reasons for rejecting the City’s interpretation: first, because the Public Officers Law provision was enacted after the Civil Service Law was amended; and second, because legislative history shows that when the Civil Service Law was amended its sponsors intended it to broaden rather than restrict the population eligible for such positions.
Forty years ago section 3 of the Public Officers Law was a short and simple document requiring public officers to reside in the political subdivision in which they served. The provision regarding residency requirements for firefighters was enacted in the 1950s and amended several times. In 1958 the general requirement was lifted for firefighters, who were no longer "deemed to be holding a civil office or a local office within the meaning of this section” (L 1958, ch 480, § 1). That enactment, however, had a specific saving clause leaving in effect any general, special or local law at any level, thus allowing municipalities to impose their own residency rules.
The next year the section was amended to add a residence requirement of six months. The saving clause remained (L 1959, ch 45).
Civil Service Law § 23 (4-a) was enacted by the Laws of 1963 (ch 357). Its sponsor’s Memorandum will be considered in a moment. Two years after that amendment the Legislature amended the Public Officers Law again, bringing it to its present form, and wholly reversing the saving clause; the words "This subdivision shall not be deemed to amend, modify or supersede” was deleted and the laws which had earlier been *584 deemed not to have been superseded were now held to have no application "to the appointment or continuance in office” of firefighters, if they required such to be residents of the municipality or subdivision in which his or her duties were to be performed. The only requirement was that firefighter live in the county where the municipality was located (L 1965, ch 985, § 1).
The Memorandum of State Fire Fighters Association makes it clear that the amendment was to grant firefighter the right to live anywhere in the county, both to broaden recruitment and to recognize the prevalence of metropolitan commuting (1965 NY Legis Ann, at 108-109).
The purpose of the section, in fact, is clear enough from its language. In addition, the language speaks specifically of both appointment and continuance in office. It can hardly be gainsaid that residence requirements are as repugnant to this statute at the time of hiring as they are at any later stage in a firefighter’s career. The City’s limitation of hiring to City residents clearly violates this ban.
The simple fact that this amendment postdates the enactment of Civil Service Law § 23 (4-a) would be dispositive. The sponsor’s Memorandum to the earlier bill, though, shows that the conflict between the two sections is apparent rather than real. Indeed, the sponsor viewed the bill as broadening instead of limiting the residency requirements that were otherwise permitted: "The purpose of the bill is to permit municipal civil service commissions outside the City of New York to open eligibility for examination and appointment to persons residing in surrounding localities and thus overcome situations, permitted under the present law, in which an appointing authority exercises its right to insist on limiting eligibility for appointment to residents of the municipality involved even though there are no residents on the list willing to accept appointment but ample numbers of eligibles from surrounding communities” (1963 NY Legis Ann, at 123). The section was thus intended to have the opposite effect from the one the City claims was its objective. It does not give the City the option of preferring residents; it was intended to permit nonresidents to have a chance at filling positions that were otherwise validly limited to residents.
Even though the current form of Public Officers Law § 3 (4) was not in effect at the time the Civil Service Law was amended, the sponsor took pains to state that the amendment was not intended to have any effect on that statute: "Another *585 sentence is included to recite that this subdivision shall not be deemed to supersede any general or special law relating to residence requirements of local officers and employees. We have in mind avoiding any conflict with enactments in recent years pertaining to residence qualifications of policemen, firemen and sanitation men” (op. cit., 1963 NY Legis Ann, at 123). If there is any ambiguity at all in the language of Civil Service Law § 23 (4-a), this Memorandum would resolve it in petitioner’s favor.
Thus, both general statutory interpretation and legislative history show that no distinction may be made between City residents and other residents of Monroe County in the hiring of Rochester firefighters. The City’s long-standing policy of preferring residents cannot be supported by reference to the Civil Service Law, when that law is read in conjunction with the Public Officers Law.
The court is aware that the Fourth Department, among other courts, has interpreted Civil Service Law § 23 (4-a) as explicitly permitting residence requirements (see, e.g., Matter of Brosnan v Quinzi, 130 AD2d 958; see also, Matter of Hanlon v Harrolds, 82 Misc 2d 839). That interpretation is not strictly on all fours with the issue here presented, and it is unclear if the Appellate Division was presented with the Public Officers Law and asked to construe the statutes together. The court’s research leaves it with no choice but to conclude that no such permission exists in the case of firefighters, and that the City’s interpretation of the Civil Service Law renders much of the Public Officers Law section ineffective. The Civil Service Law was not intended to allow municipalities to do indirectly, by preferences, what the Public Officers Law forbade. No matter how laudable the City’s aim in requiring new firefighters to be City residents, it cannot prevail against the clear will of the State Legislature.
As the petitioner’s residence remained throughout in Monroe County, his alleged misrepresentations did not go to a material fact. The court does not condone misrepresentations of this sort, but they do not furnish grounds for dismissal under the narrow ground the City alleges. Thus, no hearing is necessary; petitioner is entitled to a judgment, with costs, declaring that his discharge was improper. He is to be returned to service, with pay retroactive to the day he was discharged.

. The following paragraph might also seem applicable, given the City’s position, but was not cited: "(g) who has practiced, or attempted to practice, any deception or fraud in his application, in his examination, or in securing his eligibility or appointment.”

. It is perhaps for this reason that the City chose not to cite Civil Service Law § 50 (4) (g), cited in n 1.