William AGUIRRE, Michael Petry, and DeMary Lopez, Administratrix and Personal Representative of the Estate of Miguel A. Valle, Jr., Deceased, Plaintiffs,

v.

NEW YORK STATE POLICE, Thomas A. Constantine, former Superintendent of Police, and James W. McMahon, Superintendent of Police, Defendants.

Nos. 94 CIV. 5921 DAB, 94 CIV. 8387 DAB, 94 CIV. 5915 DAB.

United States District Court, S.D. New York.

July 5, 2001.

Marttie Louis Thompson, New York City, for Plaintiff William Aguirre.

Arthur H. Grae, Hastings–On–Hudson, NY, for Plaintiff Michael Petry.

Leeds & Morelli, Robert J. Valli, Jr., Carle Place, NY, for the Estate of Miguel A. Valle, Jr.

Elliot Spitzer, Attorney General of the State of New York, Jeanne Lahiff, Richard Rubentstein, Constantine Speres, New York City, for Defendants.

*OPINION*

BATTS, District Judge.

William Aguirre, Michael Petry and De-Mary Lopez, administratrix and personal representative of the estate of Miguel A. Valle, Jr. ("Plaintiffs"), bring this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and New York Human Rights Law, N.Y. Exec. Law § 290, *et seq.* ("HRL"). Plaintiffs are former New York State Troopers. Plaintiffs allege that the New York State Police, Thomas Constantine, former Superintendent of Police and James McMahon, Superintendent of Police, ("Defendants") discriminated against them on the basis of their race and ethnicity. All three Plaintiffs are Hispanic and were dismissed from their positions. Defendants claim that Plaintiffs were dismissed due to a night of drunken and violent behavior.

In addition, Plaintiffs Petry and Valle claim violations of 42 U.S.C. § 1983, alleging that Defendants deprived them of their First Amendment rights. Petry and Valle also allege retaliation, stating that the Defendants discharged them from their positions when the Defendants learned that Valle filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). Defendants now move for summary judgment. For the foregoing reasons, Defendants' motion is granted in its entirety.

# I. BACKGROUND

## A. Plaintiffs' Background and Work Record

### 1. *William Aguirre*

William Aguirre ("Aguirre") was employed with Troop "T" of the New York State Police in Albany, New York from 1979 to 1992. (Pl. Aguirre 56.1 Stmt. ¶ 1; Defs.' 56.1 Stmt. ¶ 1.) [1] He was also a member of the Fraternal Order of Police and the Policeman's Benevolent Association, both non-minority organizations. (Pl. Aguirre 56.1 Stmt. ¶ 16.)

During his tenure as a state trooper, Aguirre received two letters of censure and was disciplined by the New York State Police. (Pl. Aguirre 56.1 Stmt. ¶ 19; Defs.' 56.1 Stmt. ¶ 19.) On December 19, 1980, Aguirre received a letter of censure for his involvement in a preventable troop car accident. (Pl. Aguirre 56.1 Stmt. ¶ 20; Defs.' 56.1 Stmt. ¶ 20.) In addition, on February 26, 1982, Aguirre received a letter of censure for failing to identify the owner of an abandoned vehicle, which was stolen, failing to make a blotter entry, and failing to submit an impounded vehicle report. (Pl. Aguirre 56.1 Stmt. ¶ 21; Defs.' 56.1 Stmt. ¶ 21.)

### 2. *Michael Petry*

Michael Petry ("Petry") was also employed with Troop "T" of the New York State Police in Albany, New York in December 1992. (Pl. Petry 56.1 Stmt. ¶ 1; Defs.' 56.1 Stmt. ¶ 1.) Petry was a member of the Hispanic Organization of Police and the Guardians, both minority organizations. (Pl. Petry 56.1 Stmt. ¶ 4; Defs.' 56.1 Stmt. ¶ 4.)

While working as a trooper Petry received several sanctions and letters of censure. Petry was sanctioned with the loss of two vacation days by the New York State Police for failing to appear for night shift duty. (Pl. Petry 56.1 Stmt. ¶ 5; Defs.' 56.1 Stmt. ¶ 5.) Petry also admits he was suspended for three days for failing to submit an arson report. (Pl. Petry 56.1 Stmt. ¶ 6; Defs.' 56.1 Stmt. ¶ 6.) Finally, Petry received two letters of censure for careless, dubious and negligent police work in the prosecution of a criminal case and for failing to report to duty on one occasion. (Pl. Petry 56.1 Stmt. ¶¶ 8, 11; Defs.' 56.1 Stmt. ¶¶ 8, 11.) Petry was placed on probation for ninety days for negligent work on the criminal case noted above. (Pl. Petry 56.1 Stmt. ¶ 10; Defs.' 56.1 Stmt. ¶ 10.)

### 3. *Miguel A. Valle, Jr.*

Miguel A. Valle, Jr. ("Valle") was employed by the Division of State Police assigned to Troop "K" in Poughkeepsie, New York in December 1992. (Pl. Valle 56.1 Stmt. ¶ 2; Defs.' 56.1 Stmt. ¶ 2.)

Valle was sanctioned on numerous occasions for work-related offenses. On December 5, 1986, Valle was censured for failing to report to duty on two occasions, which he admits but adds was due to illness. (Pl. Valle 56.1 Stmt. ¶ 26.) On February 2, 1989, Valle was censured for failing to assist a disabled motorist, which he admits but notes he did what was required. (*Id.* ¶ 27.) For this violation Valle was placed on probation for ninety days, which he states was unjustified. (*Id.* ¶ 29.) On February 15, 1983, Valle was censured for possessing and selling a revolver reported missing from the Rochester Police Department inventory, to which he admits, but

---

**1.** As of April 15, 1997, the rule governing statements of material fact on motions for summary judgment is Local Rule 56.1. The above referenced 56.1 Statements were submitted to the Court prior to this date pursuant to Local Rule 3(g). The Court will refer to the parties' submissions as local 56.1 statements ("56.1 Stmt.").

was found without criminal intent by the New York State Police. (*Id.* ¶ 33.) On two occasions, Valle received memoranda for failure to report to duty, misuse of military leave and failure to obey lawful orders. (*Id.* ¶ 34–35.) He was placed on six months probation regarding the last memorandum. (*Id.* ¶ 36.) On September 15, 1989, Valle was censured for failing to appear for a trial. (*Id.* ¶ 37.) Finally, on November 2, 1981, Valle was involved in a troop car accident, which was determined to have been preventable. (*Id.* ¶ 38.)

## B. December 12, 1992 Incident

On December 12, 1992 [2], Plaintiffs attended a party with other members of the New York State Police at a restaurant in Port Chester, New York. (Pl.s' 56.1 Stmt. ¶ 48; Defs.' 56.1 Stmt. ¶ 48.) Plaintiffs left the restaurant at 9:00 p.m. and went to Sue's Rendezvous, a topless bar in Mount Vernon, New York. (Pls' 56.1 Stmt. ¶¶ 54–55; Defs.' 56.1 Stmt. ¶¶ 54–55.) Plaintiffs were drinking heavily. (Pl. Aguirre 56.1 Stmt. ¶¶ 52, 56–59, 61; Pl. Petry 56.1 Stmt. ¶¶ 53, 61; Defs' 56.1 Stmt. ¶¶ 52–53, 56–59, 61) At 2:45 a.m. an employee of the bar informed off-duty Mount Vernon Police Department Detectives Michael LaRotanda ("LaRotanda") and Mario Manganiello ("Manganiello"), who were also patrons in the bar, that one of the Plaintiffs was carrying a concealed weapon. (Pls' 56.1 Stmt. ¶¶ 64–65; Defs.' 56.1 Stmt. ¶¶ 64–65.) Unaware that Plaintiffs were state troopers, the Detectives telephoned the local police asking them to investigate. (Pls' 56.1 Stmt. ¶ 66; Defs.' 56.1 Stmt. ¶ 66.)

A local Mount Vernon police officer, Matthew Lombardo ("Lombardo"), arrived in uniform. (Pl. Petry 56.1 Stmt. ¶ 68; Defs.' 56.1 Stmt ¶ 68.) The detectives were in civilian clothes. (*Id.*) A "scuffle ensued" between Lombardo, Valle and Petry when Lombardo requested that Valle accompany him outside of the bar. (*Lopez v. Constantine*, 639 N.Y.S.2d 158, 159 (N.Y.A.D. 3rd Dep't 1995).) [3] During the course of the confrontation Valle struck Lombardo in the face. (*Id.*) Valle was subsequently subdued, but while Lombardo straddled Valle's back in an attempt to handcuff him, Petry grabbed Lombardo by the arm and collar and pulled him off. (*Petry v. Constantine*, 210 A.D.2d 866, 621 N.Y.S.2d 131, 131 (N.Y.A.D. 3rd Dep't 1994).) The detectives intervened and Plaintiffs were escorted outside of the bar. (*Id.*) Once outside, Aguirre identified himself as a state trooper. (Pl. Aguirre 56.1 Stmt. ¶ 83; Defs.' 56.1 Stmt. ¶ 83.) Petry and Aguirre spoke to Mount Vernon police officers using foul and profane language. (*Petry*, 621 N.Y.S.2d at 131; Pl. Aguirre 56.1 Stmt. ¶ 86; Defs.' 56.1 Stmt. ¶ 86.) Plaintiffs were then taken to the Mount Vernon Police Headquarters. (*Petry*, 621 N.Y.S.2d at 131.) While in the squad car, Aguirre cursed and directed obscenities toward a Mount Vernon Police Officer. (Pl. Aguirre 56.1 Stmt. ¶ 92; Defs.' 56.1 Stmt. ¶ 92.) While at the police station, Valle engaged in further aggressive and antagonistic behavior with Aguirre and Petry, including "headbutting", punching and wrestling with each other. [4] (*Lopez v. Constantine,*

---

2.  Plaintiffs and Defendants differ as to the date of the incident in all of their motions to the Court. The Court adopts the date referenced in Plaintiffs' 56.1 Statements.

3.  The Court relies on the facts established through later state Article 78 proceedings based on the doctrine of collateral estoppel. *See supra.*

4.  Plaintiff Aguirre denies participating in any aggressive or threatening behavior while at the police station. Aguirre 56.1 Stmt. ¶¶ 98, 103, 111, 117–121. However, two state courts found that Plaintiffs Petry and Valle engaged in aggressive acts with him. *Petry*, 621 N.Y.S.2d at 132; *Lopez v. Constantine*, 225 A.D.2d 899, 639 N.Y.S.2d 158, 159 (N.Y.A.D. 3rd Dep't 1996). Further several witnesses

225 A.D.2d 899, 639 N.Y.S.2d 158, 159 (N.Y.A.D. 3rd Dep't 1996); *Petry*, 621 N.Y.S.2d at 131; Defs.' 56.1 Stmt. ¶ 98). Petry and Valle's wrestling became so severe that Patrolman Godshall and several Mount Vernon police officers had to separate the two troopers—during which time Valle kicked a hole in a supervisor's office wall. (Pl. Petry 56.1 Stmt. ¶ 101; Defs.' 56.1 Stmt. ¶ 101.) Furthermore, Petry made obscene gestures towards members of the Mount Vernon Police Department and threatened them with future retribution when they used the highways. (*Petry*, 621 N.Y.S.2d at 131.) Finally, while Aguirre denies it, an administrative hearing found that at the police station Aguirre grabbed Sergeant Francine Moen by the arm twice, made obscene remarks, and called her "honey".[5] (Pl. Aguirre 56.1 Stmt. ¶ 118 citing Administrative Determination at 11.)

## C. New York State Police Charges and Administrative Hearing

On February 1, 1993, the New York State Police served Plaintiffs with charges for violating sections 8.41(a)(1), 8.41(a)(2) and 8.44 of the New York State Police Rules and Regulations. Valle's charges stemmed from striking a uniformed police officer, engaging in violent, tumultuous and threatening behavior and using obscene language. (Pl. Valle 56.1 Stmt. ¶ 125; Defs.' 56.1 Stmt. ¶ 125.) Petry was charged with violations due to grabbing and wrestling with uniformed police officers, engag-

ing in violent, tumultuous and threatening behavior and using obscene language as well. (Pl. Petry 56.1 Stmt ¶ 126; Defs.' 56.1 Stmt. ¶ 126.) Finally, Aguirre was charged with violations for subjecting Sergeant Francine Moen to physical contact, engaging in violent, tumultuous and threatening behavior and using abusive and obscene language. (Pl. Aguirre 56.1 Stmt. ¶ 127; Defs.' 56.1 Stmt. ¶ 127.)

On April 20, 1993, New York State Police Superintendent Constantine designated a Hearing Board to hold an administrative hearing concerning the charges and specifications served on the Plaintiffs.[6] The Hearing Board held a hearing of the charges and specifications on May 4, 5 and 7, 1993. (Pl.s' 56.1 Stmts. ¶ 129; Defs.' 56.1 Stmt. ¶ 129.) Over three days, the Board heard nine witnesses, all of whom were subject to cross-examination.

Petry appeared and was represented by counsel. Petry offered testimony and was cross-examined. Barrantes Aff. Ex. P. (Hearing minutes). Valle did not appear, due to medical reasons, but was represented by counsel. Barrantes Aff. Ex. P (May 4, 1993 Minutes at 8–9). Aguirre appeared representing himself and was permitted to cross-examine witnesses.

The Board found Aguirre guilty of all three charges, except there was no evidence presented to support the specification that Aguirre failed to identify himself as a state trooper or that he was abusive

---

testified at an administrative hearing concerning Aguirre's violent and harassing conduct, *see* Administrative Hrg. at 11, while Aguirre admits he was too drunk to recall many of the events in question. Aguirre 56.1 Stmt. ¶ 148. Consequently, no reasonable juror could conclude that Aguirre remained an innocent bystander throughout the fracas in the stationhouse. *See Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (summary judgment may be granted where a nonmovant's evidence is "merely colorable, or is not significantly probative"). *See*

*also Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986) (A party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.").

5.  *See* note *infra.*

6.  Plaintiffs each faced specifications which served as fact-specific charges underlying each main charge.

and used obscene language directed against one detective. (Pl. Aguirre 56.1 Stmt ¶ 143.) Most notably the Board found Aguirre subjected a female officer to physical contact by grabbing her arm and making obscene remarks. (Pl. Aguirre 56.1 Stmt. ¶¶ 145–146; Defs.' 56.1 Stmt. ¶¶ 145–146.)

Petry was also found guilty of all three charges. (Pl. Petry 56.1 Stmt. ¶ 137; Defs.' 56.1 Stmt. ¶ 137.) In its deliberations, the Board considered Petry's argument that he was aiding a brother trooper he thought was being assaulted. (Pl. Petry 56.1 Stmt. ¶ 139; Defs.' 56.1 Stmt. ¶ 139.) The Board found his testimony was not credible and further found Petry showed no remorse for his actions or conduct, which Petry denies. (Pl. Petry 56.1 Stmt. ¶¶ 140–141.)

Finally, Valle was also found guilty of all three charges. (Pl. Valle 56.1 Stmt ¶ 149; Defs.' 56.1 Stmt. ¶ 149.) Based on these findings the Board recommended the termination of each Plaintiff from the New York State Police. (Pls.' 56.1 Stmts. ¶ 150; Defs.' 56.1 Stmt. ¶ 150.) On June 1, 1993, Aguirre, Petry and Valle were dismissed. (Pls.' 56.1 Stmts. ¶ 151; Defs.' 56.1 Stmt. ¶ 151.)

### D. Article 78 Proceedings

Upon dismissal, Petry and Valle each brought proceedings in the New York State courts to review their dismissals pursuant to New York Civil Practice Law and Rules Article 78.[7] The Third Department affirmed both Plaintiffs' dismissals and found meritless their contentions that the hearing procedure should be voided and the penalty of dismissal for the offenses was too severe. (*Petry*, 621 N.Y.S.2d at 132; *Lopez*, 639 N.Y.S.2d at 159.) Both courts found ample evidence that Petry and Valle engaged in misconduct sufficient to bring discredit to the state police by violating state police rules and regulations, warranting a dismissal. (*Petry*, 621 N.Y.S.2d at 132; *Lopez*, 639 N.Y.S.2d at 159.) Aguirre did not bring an Article 78 proceeding.

### E. Procedural History

Thereafter, Plaintiffs brought three separate actions against Defendants alleging violations of Title VII, New York Human Rights Law and § 1983 as noted above.[8] The actions were consolidated.

Prior to this motion, Defendants moved to dismiss the Title VII actions as to Constantine and McMahon. Valle voluntarily withdrew his Title VII claims in a letter to the Court, while Petry consented to withdrawal in his reply brief.[9]

---

7. Article 78 states, "[r]elief previously obtained by writs of certiorari to review, mandamus or prohibition shall be obtained in a proceeding under this article." N.Y. CPLR § 7801 (Consol.2001). Under New York law, Article 78 proceedings are limited to issues of whether administrative determinations were made in violation of lawful procedure, were arbitrary and capricious, abused discretion or were not supported by substantial evidence. N.Y. CPLR §§ 7803(3) and 7804; *see also Owens v. New York City Housing Authority*, 934 F.2d 405, 410 (2d Cir.1991).

8. Additional claims brought by Valle against the Police Benevolent Association ("PBA") and McMormick, President of the PBA, for failure to represent, were later withdrawn by Valle pursuant to a fully executed Stipulation and Order dated October 14, 1994.

9. Aguirre, however, did not respond to the motion. Nevertheless Aguirre's Title VII claims as to the individual defendants are hereby dismissed. Title VII remedial provisions led the Second Circuit to conclude that "Congress never intended to hold agents individually liable for violations of the [Civil Rights] Act." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314 (2d Cir.1995). Accordingly Defendants Constantine and McMahon may not be held individually liable under Title VII. *Id.* at 1317. The Court retains the discretion to dismiss state claims that have no federal juris-

Defendants now move for summary judgment on the grounds that Plaintiffs have not established a prima facie case under Title VII and have failed to put forth evidence demonstrating that the State Police's non-discriminatory reason for terminating was pretextual. Defendants also challenge the remaining claims.

## II. DISCUSSION

The Court's role on a motion for summary judgment is not to resolve disputed issues of fact, but to determine whether there are any genuine issues for trial. Summary judgment may be granted only when there is no genuine issue of material fact remaining for trial, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (summary judgment requires that there be "no genuine issue of material fact"); *Corselli v. Coughlin*, 842 F.2d 23, 25 (2d Cir.1988) (summary judgment inappropriate where "obvious factual conflicts in the record" exist).

In assessing whether summary judgment should be granted, the Court must "resolv[e] ambiguities and [draw] reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986). "Viewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991.) If the nonmovant's evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at

249, 106 S.Ct. 2505 (citations omitted). A party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight*, 804 F.2d at 12.

### A. Collateral Estoppel

Before reaching the issues raised in this motion for summary judgment, it is necessary to evaluate the preclusive effects of the prior state and administrative proceedings. Specifically, Petry and Valle brought Article 78 proceedings to review their employment terminations while Aguirre participated in an administrative proceeding.

With limited exceptions, "[f]ederal courts must give to a New York court judgment the same preclusive effect that New York courts would give to it." *Genova v. Town of Southampton*, 776 F.2d 1560, 1561 (2d Cir.1985) (per curiam) (citing *Migra v. Warren City Sch. Dist.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)). New York's doctrine of collateral estoppel (or issue preclusion) "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Burgos v. Hopkins*, 14 F.3d 787, 792 (2d Cir.1994) (quoting *Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487 (N.Y.1984)).

> Under New York Law, the doctrine of issue preclusion [collateral estoppel] only applies if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted

diction. Given that the Title VII claims against the individual Defendants Constantine and McMahon have been dismissed under *Tomka*,

the Court hereby dismisses the HRL claims as well.

had a full and fair opportunity to litigate the issue in the first proceeding. *Chartier v. Marlin Mgmt., LLC.*, 202 F.3d 89, 94 (2d Cir.2000) (quoting *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir.1995)) (additional citations omitted). "Issue preclusion will apply only if it is quite clear that these requirements have been satisfied, lest a party be precluded from obtaining at least one full hearing on his or her claim." *Id.* (quoting *Colon*, 58 F.3d at 869 (internal quotations and additional citations omitted)).

■ However, as the Supreme Court has made clear, in federal court the preclusive effect of a state proceeding will vary depending upon the claim and the presence or absence of final state court review. *See University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986); *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). For example, an unreviewed state administrative determination can never preclude *de novo* federal court consideration of a Title VII claim while it may preclude consideration of a later Section 1983 claim. *See University of Tennessee*, 478 U.S. at 792, 106 S.Ct. 3220. This is true even if the unreviewed administrative determination would be given preclusive effect in state court. *Id.* at 793, 106 S.Ct. 3220.

Courts must analyze the unique circumstances of each case, rather than apply a rigid bright-line rule in deciding the preclusive effect of a prior judgment. *Giakoumelos v. Coughlin*, 88 F.3d 56, 61 (2d Cir.1996). In keeping with this principle, the Court evaluates the relevant issues litigated in the Article 78 and administrative proceedings for their possible preclusive effect.

### 1. *The Article 78 Proceedings*

■ Petry and Valle's Article 78 proceedings found sufficient evidence of mis-

conduct and violations "to bring discredit upon the state police" warranting termination. *Petry*, 621 N.Y.S.2d at 132; *Lopez*, 639 N.Y.S.2d at 159. The court relied on the administrative hearing testimony elaborating upon all of the facts regarding the incident at the bar, police station and each Plaintiffs' specific misconduct. *Petry*, 621 N.Y.S.2d at 131; *Lopez*, 639 N.Y.S.2d at 159. Not only did the court find sufficient evidence, it found Petry and Valle's claims regarding the hearing procedure and the severity of the penalty lacked merit. *Petry*, 621 N.Y.S.2d at 132; *Lopez*, 639 N.Y.S.2d at 159.

Petry and Valle continue to dispute the facts of the incident at the bar and the police station, denying many of the statements of fact in Defendants' 56.1 Statements. Nevertheless, the Article 78 proceedings found sufficient evidence of misconduct to justify termination. Further, the Court finds Plaintiffs Petry and Valle have enjoyed a full opportunity to litigate the relevant factual issues. Both participated in administrative and state court proceedings with the assistance of counsel, had the opportunity to testify, and cross-examine witnesses. Following *Genova,*, "[u]nder these circumstances, New York principles of collateral estoppel would prevent [Plaintiffs] from contesting the same factual issues in any later suit against the same parties." 776 F.2d at 1561.

As the Board's determination was subject to state judicial review, the facts surrounding the incident at the bar, Plaintiffs' misconduct at the police station, the administrative hearing procedure and the severity of the penalty have been fully litigated and therefore are precluded from relitigation here. *See Kremer*, 456 U.S. at 485, 102 S.Ct. 1883 (giving collateral estoppel effect to state court judgment affirm-

ing administrative decision in Title VII action). To the extent Plaintiffs Petry and Valle seek to challenge the facts and circumstances surrounding their misconduct on the night of December 12, 1992, they are collaterally estopped from so doing.

■ However, although misconduct has been established, this does not ·prevent Petry and Valle from pursuing their Title VII or Section 1983 claims. A finding of misconduct does not lead inexorably to a finding of no race discrimination. *See Hill v. Coca Cola Bottling Co.*, 786 F.2d 550, 553–54 (2d Cir.1986). *But see Gore v̇. R.H. Macy & Co.*, No. 86 Civ. 9684, 1989 WL 65561, at *3 (S.D.N.Y. June 13, 1989) (declining to give preclusive effect to unreviewed administrative findings under Section 1981 where finding of no misconduct "would mandate, as a practical matter, a finding of race discrimination."). Further, although the circumstances surrounding their terminations (namely misconduct) have been fully litigated, Plaintiffs Petry and Valle did not raise the issue of discrimination in the prior proceedings. Therefore, there is no preclusive effect as to discrimination because collateral estoppel does not prevent a litigant from raising an issue in a later proceeding that he could have but did not raise in the first proceeding. *Leather v. Ten Eyck,* 180 F.3d 420, 426 (2d Cir.1999).

### 2. *Aguirre's Administrative Hearing*

■ Plaintiff Aguirre, however, did not seek an Article 78 proceeding after his administrative determination. Accordingly, Aguirre is entitled to *de novo* review of his Title VII claim.[10] However, while the Court does not rely on any of the facts found by the Hearing Board in deciding the instant motion, it was nevertheless permissible for the New York State Police to consider the hearing and findings in reaching its determination to terminate Aguirre. *See Raniola v. Bratton,* 243 F.3d 610, 624 (2d Cir.2001). Thus, the Court notes below further details concerning Aguirre's administrative hearing for clarity of the record.

At Aguirre's administrative hearing, the Board of the New York State Police found testimony proved that he engaged in violent, tumultuous and disruptive behavior and he refused and failed to cooperate with uniformed patrol officers and plainclothes detectives of the Mount Vernon Police De-· partment. *See* Administrative Hearing at 11. The Board also considered a detective's testimony that Aguirre took a swing at him with a clenched fist. *See* Pl. Aguirre 56.1 Stmt. ¶ 147; Defs.' 56.1 Stmt. ¶ 147. Detectives as well as two supervisors of the Mount Vernon Police testified to Trooper Aguirre's unruly, combative and antagonistic behavior while in the station house including threats of retribution. *See* Administrative Hearing at 11. Sergeant Francine Moen testified that she was forcibly grabbed by Aguirre, who made obscene and disparaging remarks to her. *See* Pl. Aguirre 56.1 Stmt. ¶¶ 145–146; Defs.' 56.1 Stmt. ¶¶ 145–146. Finally, Sergeant Robert Thoubboron testified that he ordered Aguirre to calm down and stop his unruly behavior, but Aguirre continued his actions, tried to leave the room and berated the Sergeant. *See* Administrative Hear-

---

**10.** Notably, Aguirre has not filed a section 1983 claim. Had he done so, he would not be entitled to *de novo* review of that claim and would be barred from relitigating the factual underpinnings of such a claim. *See University of Tennessee,* 478 U.S. at 799, 106 S.Ct. 3220. This conundrum, in which "administrative findings may establish preclusion as to claims under [the] Civil Rights Act, at the same time as the same issues are relitigated as to the Title VII claim," is avoided here, but underscores Justice Stevens' conclusion that *University of Tennessee,* requires a "schizophrenic approach" to issue preclusion. *University of Tennessee,* 478 U.S. at 801, n. 1, 106 S.Ct. 3220 (Stevens concurring).

ing at 12. This led to Aguirre being placed in a holding cell because of his actions and demeanor. *See Id.*

Although he had the opportunity to do so, Aguirre did not testify or rebut any of the testimony against him. *See* Pl. Aguirre 56.1 Stmt. ¶ 148; Defs.' 56.1 Stmt. ¶ 148. Given the substantial misconduct presented by the evidence the Board recommended Aguirre's termination. *See* Pl. Aguirre 56.1 Stmt. ¶ 150; Defs.' 56.1 Stmt. ¶ 150.

In short, neither Petry nor Valle may raise questions of fact concerning the incident at the bar or the police station house. While Aguirre may relitigate the factual underpinnings of the night in question, he has failed to raise serious issues of fact.[11] Thus, while Plaintiffs may dispute the factual basis for the instant motion, no genuine issues of material fact preclude consideration of summary judgment.

## B. Title VII and New York Human Rights Law Claims [12]

Title VII of the Civil Rights Act of 1964 provides, in relevant part:

> It shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a).

A complainant in a Title VII action carries the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). At the prima facie stage, the burden of proof for an employment discrimination plaintiff is *de minimus. Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

In a case involving alleged discriminatory discharge, the *McDonnell Douglas* three-step burden-shifting test requires the plaintiff first establish a prima facie case of unlawful discrimination by showing (1) he is a member of a protected group (2) who performed his job satisfactorily (3) who was discharged (4) under circumstances giving rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Stratton v. Department for Aging for New York City,* 132 F.3d 869, 879 (2d Cir.1997).

These elements are not intended to become rigid or mechanical, but rather "to promote the general principle that a Title VII plaintiff must carry the initial burden of offering evidence adequate to 'raise[ ] an inference of discrimination.'" *Meiri v. Dacon,* 759 F.2d 989, 996 (2d Cir.1985) (alteration in original) (quoting *Furnco Const. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)).

---

**11.** Aguirre's ability to dispute the factual underpinnings of the night in question is frustrated by his admitted inability to remember many of the incidents alleged due to his extreme inebriation. Aguirre 56.1 Stmt. ¶ 148. Nevertheless, the Court has drawn all reasonable inferences in favor of Plaintiff Aguirre as is required on summary judgment.

**12.** The Title VII standard is applicable to claims arising under the New York Human

Rights Law ("HRL"). *See Miller Brewing Co. v. State Div. of Human Rights.,* 66 N.Y.2d 937, 498 N.Y.S.2d 776, 489 N.E.2d 745 (1985); *Kersul v. Skulls Angels, Inc.,* 130 Misc.2d 345, 495 N.Y.S.2d 886 (1985). Defendants claim that Plaintiffs have failed to prove a prima facie case under HRL for the same reasons given under Title VII. Thus, the Court addresses Plaintiffs Title VII and HRL claims simultaneously.

When a plaintiff can demonstrate these elements, a presumption of unlawful discrimination is created. *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir.2001).

The burden then shifts to the defendant to " 'articulate some legitimate, nondiscriminatory reason' " for the adverse employment action visited upon the plaintiff. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817). If the employer offers, via admissible evidence, a justification of its action which, if believed by a reasonable trier of fact, would allow a finding of no unlawful discrimination, then " 'the *McDonnell Douglas* framework—with its presumptions and burdens—disappears, and the sole remaining issue is discrimination *vel non.*' " *Byrnie*, 243 F.3d at 102 (quoting *Reeves*, 530 U.S. at 142–43, 120 S.Ct. 2097) (citations and additional quotations omitted).

Where the defendant has offered a legitimate nondiscriminatory reason for an adverse employment action, the plaintiff must present "sufficient evidence [for the fact-finder] to find that the employer's asserted justification is false [and] to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097. When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait actually motivated the employer's decision." *Reeves*, 530 U.S. at 141, 120 S.Ct. 2097 (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)). Thus, a plaintiff must be afforded "the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097 (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089).

However, while it is *"permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation," *Reeves*, 530 U.S. at 147, 120 S.Ct. 2097, evidence that establishes a prima facie case and pretext "will [not] *always* be adequate," *Id.* at 148, 120 S.Ct. 2097. Whether summary judgment is appropriate in a particular case depends upon "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." [13] *Reeves*, 530 U.S. at 148–49, 120 S.Ct. 2097; *see also Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir.2000) (holding that *"Reeves* clearly mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.' ") (quoting *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097).

Thus, where a plaintiff establishes a prima facie case and presents some evidence of pretext, summary judgment is still appropriate where, for instance, "the record conclusively reveal[s]" a nondiscriminatory reason for the employer's action, or where the plaintiff "create[s] only a weak issue of fact" on the issue of pretext and there exists "abundant and uncontroverted independent evidence that no discrimination [has] occurred." *Schnabel*, 232 F.3d at 90 (quoting *Reeves*, 530 U.S. at 148, 120 S.Ct.

---

**13.** Although *Reeves* is a decision under Rule 50 of the Federal Rules of Civil Procedure, and not Rule 56 like the case before this Court, "the inquiry under each is the same." *Reeves*, 530 U.S. at 150, 120 S.Ct. 2097.

2097). Summary judgment is also appropriate when the plaintiff can supply no evidence that his employer's justification was a pretext. *Smith v. American Exp. Co.*, 853 F.2d 151, 154 (2d Cir.1988).

### 1. *Plaintiffs' Prima Facie Case*

There is no dispute as to elements (1) and (3) of the prima facie case: Plaintiffs, as Hispanics, are members of a protected group and they were dismissed from their positions as state troopers. The dispute arises under element two, whether Plaintiffs performed their jobs satisfactorily, and element four, whether their discharge took place under circumstances giving rise to an inference of discrimination.

#### a. Satisfactory performance

For the satisfactory performance prong of the prima facie case, Plaintiffs "need not demonstrate that [their] performance is flawless or superior, but rather only that [they] 'possess the basic skills necessary for performance of the job.'" *de la Cruz v. New York City Human Resources Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir.1996) (quoting *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir.1978)). Further, the findings of misconduct, on December 12, 1992, do not preclude Plaintiffs from demonstrating they were qualified for their jobs. In *Owens v. New York City Hous. Authority*, the Second Circuit had no doubt that misconduct may certainly provide a legitimate and nondiscriminatory reason to terminate an employee. 934 F.2d 405, 409 (2d Cir.1991). Misconduct is distinct, however, from the issue of minimal qualification to perform a job. *Id.* An individual may well have the ability to perform job duties, even if her conduct on the job is inappropriate or offensive. *Id.* Accordingly, the findings of misconduct here cannot preclude Plaintiffs

from showing their qualification for employment.

Defendants rely on numerous instances of unsatisfactory job performance by Plaintiffs. Plaintiffs counter that, nonetheless, they were qualified for their respective positions. Plaintiffs argue that the sole stated basis of their discharges was the incident at the bar, and therefore Defendants' reliance on the Plaintiffs' alleged questionable work history creates an issue of fact, the resolution of which is inappropriate at this time.

Defendants' evidence of Plaintiffs' work history, including numerous letters of censure and probation notifications prove only that Plaintiffs performed their jobs on occasion to less-than-complete satisfaction of their employer. The evidence does not indicate, however, that they lacked the basic skills necessary to work as troopers. Indeed Plaintiffs worked as troopers for six to thirteen years before the incident in question. Defendants' argument that Plaintiffs were not qualified fails considering Plaintiffs' long record of employment with the New York State Police. *See Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir.2001) (finding when an employer has retained the plaintiff for a significant period of time the strength of the inference that she possesses the basic skills required for her job is heightened). In light of the *de minimus* standard, Plaintiffs have sufficiently demonstrated satisfactory performance.

#### b. Inference of Discrimination

"A plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably." *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir.1999) (citing *Shumway*, 118 F.3d 60, 63 (2d Cir.1997)). *See also Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir.2001) (not-

ing that a showing of disparate treatment "while a common and especially effective method of establishing the inference of discriminatory intent" is not the only method of discharging the plaintiff's burden). Because an employer who discriminates is unlikely to leave a "smoking gun" attesting to a discriminatory intent, a victim of discrimination is seldom able to prove his claim by direct evidence, and is usually constrained to rely on circumstantial evidence. *Chambers*, 43 F.3d at 37.

Plaintiffs assert that similarly situated white officers who engaged in misconduct were not terminated and received less severe punishment. In order to raise an inference of discrimination under their disparate treatment theory, Plaintiffs must establish that they were treated differently from non-Hispanic officers who were "similarly situated in all material respects". *Norville*, 196 F.3d at 96 (citing *Shumway*, 118 F.3d at 64). More specifically, the employees must have been subject to the same standards governing performance evaluation and discipline and must have engaged in conduct similar to Plaintiffs. *Norville*, 196 F.3d at 96.

Plaintiffs attempt to satisfy this standard by claiming that they were treated less favorably than five white officers who received lesser punishment for allegedly comparable misconduct. Specifically, Plaintiffs allege the following facts:

In 1990, an investigator for the New York State Police, received tickets for driving while intoxicated, leaving the scene of an accident and driving the wrong way on a one way road while in his trooper car. *See* Pl. Petry 56.1 Counterstatement ¶ 28. He later pled guilty to driving while ability impaired and was fined and given a conditional discharge. *Id.* ¶ 29. The investigator received a letter of censure, suspension without pay for ten days and thirty days probation. *Id.* ¶ 37.

In 1987, a New York State Trooper, received a letter of censure for threatening a friend in a public restaurant with his firearm while under the influence of alcohol while off duty. *See* Pl. Petry 56.1 Counterstatement ¶ 9. As a penalty, he received six months probation and suspension without pay. *Id.* ¶ 21.

In 1986, a Trooper punched and struck a civilian in the face, causing her physical injury. *See* Pl. Petry 56.1 Counterstatement ¶ 39. Shortly thereafter, he fired four shots toward a lake with a 9mm automatic weapon. *Id.* ¶ 43. Formal disciplinary charges were brought against the Trooper for engaging in misconduct that brought discredit upon the New York State Police. *Id.* ¶ 46. The Division of State Police settled and resolved the charges by imposing a letter of censure, suspension without pay for thirty days and probation for six months. *Id.* ¶ 47.

In 1986, another New York State Trooper faced charges of assault and reckless endangerment after allegedly spitting on a civilian and physically dragging her. *See* Pl. Petry 56.1 Counterstatement ¶ 49. He was also found to have exploded fireworks without a permit. *Id.* ¶ 54. Division of State Police hearing charges were settled and he received a letter of censure, thirty-day suspension without pay and six months probation. *Id.* ¶ 55. He also pled guilty to harassment and disorderly conduct and was fined $100,000. *Id.* ¶ 56.

In 1984, another investigator faced four charges ranging from menacing to negligent use of a firearm after a physical confrontation with a restaurant proprietor when he drew his pistol and threatened to "blow him away" if he did not cooperate in answering questions.

*See* Pl. Petry 56.1 Counterstatement ¶¶ 1–2. He pled guilty to two of four charges and received six months probation with an order for alcohol abuse treatment. *Id.* ¶¶ 6–7.

Plaintiffs have sufficiently established that the above white officers were similarly situated in terms of performance evaluation and discipline since many of the officers violated comparable regulations and underwent similar disciplinary proceedings as Plaintiffs. However, Plaintiffs have not shown that the officers engaged in conduct similar to their own. *See Norville,* 196 F.3d at 96. In the prior administrative and judicial proceedings, Plaintiffs were found to have:

> engaged in a scuffle in a public place with uniformed police officers; punched a uniformed officer in the face; shouted obscenities and foul language to uniformed officers; jumped on the back of a uniformed police officer, preventing him from handcuffing one of the Plaintiffs; engaged in violent and combative behavior with each other while at Police Headquarters, including wrestling and headbutting; kicked a three-inch hole in the wall of a local police supervisor's office; made threats to uniformed police officers of unwarranted tickets to be issued against them; attempted to leave a holding cell; grabbed the arm of a female sergeant at local police headquarters while making obscene and sexist remarks. *See Lopez,* 639 N.Y.S.2d at 159; *Petry,* 621 N.Y.S.2d 131; and Pl. Aguirre 56.1 Stmt. ¶¶ 145–146.

These circumstances are not similar to that of the white officers presented by the Plaintiffs. None of the white officers engaged in a violent altercation with local uniformed police in a public place; were alleged to have directed obscene, sexist or foul language to other local uniformed police; threatened the misuse of power

against local police; nor engaged in violent, tumultuous or combative behavior in a police stationhouse. While each of the white officers noted above may have brought discredit to the New York State Police, none of them created a comparable level of friction between state troopers and a local police department.

The Second Circuit has frequently denied Title VII claims for failure to establish comparable conduct. *See, e.g., Shumway,* 118 F.3d at 64 (affirming summary judgment where plaintiff did not show that any other employees she claimed to have violated the "no fraternization" rule engaged in the same level of misconduct); *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 568 (2d Cir.2000) (affirming summary judgment on racial discrimination claim due to plaintiff's failure to establish that differently treated non-Hispanic employees engaged in similar conduct); *Norville,* 196 F.3d at 96 (concluding plaintiff did not show other employees were subject to the same standards governing performance, evaluation and discipline, nor engaged in conduct similar to the plaintiff's). The failure to compare themselves to similarly situated employees is fatal to Plaintiffs' discriminatory enforcement claim.

■ Plaintiffs' evidence is also insufficient to establish a statistical basis to infer discrimination. Here, Plaintiffs cite to five examples of alleged disparate treatment spanning seven years and preceding Plaintiffs' misconduct by two to nine years. In *Pollis v. New School,* the Second Circuit concluded that the smaller the sample of statistics, the greater the likelihood that an observed pattern is attributable to factors other than discrimination, making less persuasive any inference of discrimination. 132 F.3d 115, 121 (2d Cir.1997). Plaintiffs' isolated statistical samples over such an extended period cannot give rise to an inference of discrimination. Other courts

have ruled as a matter of law, that discrimination may not be proved by statistics involving so small a pool. *See, e.g., McCarthy v. New York City Tech. College,* 202 F.3d 161, 165 (2d Cir.2000) (plaintiff's statistical sample of two was clearly insufficient to sustain a reasonable inference that the defendant's treatment was motivated by discriminatory intent); *Haskell v. Kaman Corp.,* 743 F.2d 113, 121 (2d Cir.1984) (ten terminations over an eleven-year period was an insufficient sample size to support an inference of age discrimination). In *Pollis,* the Second Circuit also noted that a significant lapse in time between the events concerning the plaintiff and those of other employees is not useful in drawing an inference of discrimination. 132 F.3d at 122.

A court must not "impute discrimination ... on the basis of circumstantial evidence that has no logical tendency to show that discrimination was present." *Pollis,* 132 F.3d at 123. Five anecdotes, while instructive, is not enough to demonstrate a pattern of racial bias on the part of Defendants. In addition, Plaintiffs' sample dates back to fifteen years before submission of Defendant's motion. Further, Plaintiffs were terminated in June of 1993, yet their statistical sample fails to evidence any, even arguably similarly situated white officers, who were treated differently after 1990. Most importantly, no officer cited by Plaintiffs engaged in similar conduct. It therefore follows that Plaintiffs have not offered a sufficient comparative sample to "support reasonably the inference that the employer's adverse decision would not have occurred but for discrimination." *Pollis,* 132 F.3d at 123. Plaintiffs' evidence of disparate treatment is too scant and too flawed to support such an inference.

Plaintiffs fail to demonstrate that the white officers cited are similarly situated as a matter of law. Plaintiffs have failed to

put forward sufficient evidence to raise an inference of discrimination and, therefore, cannot establish a prima facie case of discrimination.

### 2. *Defendants' Non-discriminatory Reason*

■ Further, even if the Court were to assume that Plaintiffs could show a prima facie case of discrimination, Defendants have asserted a non-discriminatory reason for Plaintiffs' termination—namely misconduct. As mentioned above, the facts of the incident in question are not in dispute as judicial proceedings found · the evidence overwhelmingly favored a finding of reprehensible misconduct on the part of the Plaintiffs. Misconduct is a legitimate non-discriminatory ground for termination. *Shumway,* 118, F.3d at 65. Hence, Defendants have successfully rebutted the presumption against discrimination.

### 3. *Pretext*

■ In response to this legitimate non-discriminatory reason for termination, Plaintiffs again offer the anecdotal evidence of the five white officers as proof that Defendants' stated reason is merely pretextual. A showing that similarly situated employees belonging to a different racial group received more favorable treatment can also serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for racial discrimination. *Graham,* 230 F.3d at 43. However, Plaintiffs' evidence is equally flawed and insufficient as pretext evidence. Plaintiffs failed to demonstrate that the white officers cited are similarly situated as a matter of law.

As Plaintiffs have failed to establish a prima facie case or create a jury question as to pretext, summary judgment in favor of Defendants is appropriate as to Plain-

tiffs' claims of discriminatory discharge under Title VII and the New York Human Rights Law.

## C. Retaliation Claims

Plaintiffs Valle and Petry also assert retaliatory discrimination claims in violation of Title VII. In order to succeed in a claim for retaliation, Plaintiffs must establish a prima facie case that (1) they engaged in activity protected under Title VII; (2) Defendants were aware of Plaintiffs' participation in the protected activity; (3) Defendants took adverse action against Plaintiffs based upon their activity; and (4) a causal connection existed between Plaintiffs' protected activity and Defendants' adverse action. *Raniola,* 243 F.3d at 624. Once a prima facie case of retaliation is established, the burden shifts to the employer to assert a legitimate nondiscriminatory reason for the adverse action. *Id.* at 625. Once asserted, the burden shifts back to the plaintiff to establish "through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation." *Id.*

### 1. *Petry's Retaliation Claim*

▆ Petry alleges that by his mere association with Valle, who filed an EEOC claim in June of 1992, prior to the incident, Petry was retaliated against as a part of the retaliation against Valle for filing that claim. *See* Petry Compl. ¶ 55. Defendants argue that Petry's retaliation claim must be dismissed on the basis of a jurisdictional defect, the lack of supporting evidence, and application of the statute of limitations.

A district court may hear only Title VII claims that are either included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is reasonably related to that alleged in the EEOC charge. *Butts v. City of New York*

*Dep't of Hous. Preservation and Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993). This exhaustion requirement is an essential element of Title VII's statutory scheme. *Id.*

Here, Petry failed to raise the issue of retaliation in his EEOC charge filed in March 1994. The Second Circuit has recognized three situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge: (1) claims where the conduct complained of would fall within the scope of the EEOC investigation; (2) claims alleging retaliation by an employer against an employee for filing an EEOC charge; and (3) claims where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge. *Id.* at 1402.

Although a retaliation claim in this matter may be sufficiently related to the allegations in the charge, it is not enough to cure the jurisdictional defect. As Petry filed his EEOC claim in March 1994, a year after he was discharged, he had sufficient opportunity to allege retaliation by association with Valle as well as discriminatory discharge. The Court also notes that Petry appears to have abandoned this claim as he failed to respond to Defendants' arguments in his motion papers. Petry's retaliation claim is therefore dismissed due to jurisdictional defect as he did not include the claim in his EEOC complaint and his EEOC right to sue letter did not authorize such a claim.

### 2. *Valle's Retaliation Claim*

▆ Valle, however, did specifically allege retaliation for filing his June 1992 EEOC claim in his second EEOC claim filed in October 1993. Valle asserts that his termination in June 1993 was due to his filing an EEOC claim the previous year. Defendants argue the claim must be dismissed as they did not know that Valle

filed a complaint with the EEOC in June 1992.

There is no question that Valle engaged in a protected activity by filing the June 1992 EEOC claim. *Gallagher v. Delaney*, 139 F.3d 338, 349 (2d Cir.1998). The parties dispute Defendants' knowledge of the June 1992 EEOC filing. However, it is unnecessary to resolve this question as Valle otherwise fails to establish that his termination was motived by discriminatory retaliation. Valle offers no evidence to overcome Defendants' stated reason that he was terminated due to misconduct. Accordingly, Defendants are granted summary judgment as to this claim.

D. Constitutional Claims

■ Petry and Valle also assert § 1983 claims against the New York State Police, former Superintendent Constantine and Superintendent McMahon. The Eleventh Amendment bars Plaintiffs' § 1983 claims against the New York State Police. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66–67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Thus, summary judgment is granted as to the New York State Police.

The Eleventh Amendment does not, however, bar claims brought against individuals. Plaintiffs argue they established the prima facie case of a constitutional violation because Constantine and McMahon 1) acted under color of state law, 2) deprived the Plaintiffs of rights secured by the First Amendment and 3) their actions were the proximate cause of the Plaintiffs' discharge.

■ It is well-settled in the Second Circuit that "personal involvement in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991) (citations omitted); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996); *Wright v. Smith*, 21 F.3d 496,

501 (2d Cir.1994). A defendant may be personally involved in depriving a plaintiff of his or her constitutional rights within the meaning of § 1983 if he or she directly participated in the discriminatory action, or was grossly negligent in managing the subordinate who caused the unlawful condition or event. *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986). *See also Langley v. Coughlin*, 715 F.Supp. 522 (S.D.N.Y.1989) (citing *City of Canton v. Harris* as suggesting that inadequate supervision liability may not be actionable unless it rises to "deliberate indifference". 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). However, no § 1983 liability will sound under a theory of respondeat superior; therefore the Court must look to the extent of Defendants' involvement in the alleged unconstitutional conduct. *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir.1999).

In their brief, Plaintiffs argue they meet their prima facie burden because Defendants Constantine and McMahon investigated and terminated Plaintiffs. They do not explain how their constitutional rights were violated, the extent of Defendants personal investigation, nor rebut Defendants' arguments. Moreover, neither Petry nor Valle submitted evidence indicating that either Defendant Constantine or McMahon was personally involved in the decision to terminate Plaintiffs, or grossly negligent in managing the affairs that led to Petry and Valle's discharge. The evidence indicates that Constantine designated a board to hold an administrative hearing as is required of him by statute. *See* Pl.s' 56.1 Stmt. ¶ 128; N.Y. Comp.Codes R. & Regs. tit. 9, § 479.7(a) (2001). This is certainly not evidence that Constantine was personally involved in a discriminatory act or grossly negligent in managing the affairs that led to Plaintiffs' termination. This involvement does not rise to the level

of personal involvement necessary to establish § 1983 liability. Accordingly Defendants are granted summary judgment as to Plaintiffs' constitutional claims.

### III. CONCLUSION

Defendants are hereby granted summary judgment on all Title VII and New York Human Rights Law claims for Plaintiffs' failure to establish a prima facie case or provide evidence of pretext as to their discriminatory discharge claim. Petry's retaliation claim is barred by jurisdictional defect, while Valle's retaliation claim fails for want of sufficient evidence. Finally, Plaintiffs' constitutional claims are dismissed as Plaintiffs submitted insufficient evidence of personal involvement to support their claims against the individual Defendants and the claims are otherwise barred by the Eleventh Amendment. Summary judgment is granted in its entirety. The Clerk of the Court is directed to close the docket in this matter.

SO ORDERED.