**LATINO OFFICERS ASSOCIATION,**
**et al., Plaintiffs,**

v.

**THE CITY OF NEW YORK,**
**et al., Defendants.**

**No. 99 Civ. 9568(LAK).**

United States District Court,
S.D. New York.

March 31, 2003.

Diane Paolicelli, Jerome Block, Levy Phillips & Konigsberg, LLP, Richard A. Levy, Pamela Jeffrey, Tarik F. Ajami, Levy Ratner & Behroozi, P.C., Robert Spergel, Law Offices of Robert Spergel, for Plaintiffs.

Julie O'Neil, Stuart I. Parker, Amy F. Melican, 'Assistant Corporation Counsel, Michael A. Cardozo, Corporation Counsel of the City of New York, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Defendants in this class action move for summary judgment dismissing the wrong-ful termination claims of plaintiffs Charles Castro, Fernando Sanchez, and Reuben Malave (the "Article 78 Plaintiffs") for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine and on the basis of preclusion principles.[1]

### Facts

The Article 78 Plaintiffs are three of twenty-two class representatives in this action, which alleges discrimination by the New York City Police Department ("NYPD") on the basis of race, color, and national origin. Plaintiffs generally make three broad allegations: (1) the NYPD maintains and permits a work environment that is hostile to Latino and African–American officers; (2) the NYPD's application of its disciplinary rules and processes embodies a pattern or practice of disparate treatment of Latino and African–American officers; and (3) Latino and African–American officers have been retaliated against for complaining about what they perceived to be a hostile work environment and race-based disparities in discipline.[2] They seek declaratory and injunctive relief requiring the NYPD to, *inter alia,* abolish discrimination, appoint an independent monitor, remove the disciplinary charge process from the NYPD to an external body, and reinstate class members who were terminated in violation of the law.[3] Plaintiffs

---

**1.** It is not entirely clear to which of the Article 78 Plaintiffs' claims defendants' motion is directed. The counts in the Second Amended Class Action Complaint ("SAC") are: (1) Title VII (hostile work environment); (2) Title VII (disparate disciplinary treatment); (3) Title VII (unlawful retaliation); (4) 42 U.S.C. § 1981; (5) 42 U.S.C. § 1983 (various constitutional rights); (6) 42 U.S.C. § 1985(3); (7) New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.;* (8) NYSHRL (unlawful retaliation); (9) New York City Human Rights Law ("NYCHRL"), N.Y.C. Ad.Code § 8–207; (10) 42 U.S.C.

§ 1983 (First Amendment); and (11) libel and slander. SAC ¶¶ 189–268. The Court regards defendants' motion for summary judgment dismissing the "wrongful termination claims" of the Article 78 Plaintiffs to relate, in part, to each of the claims in the SAC except: (1) Title VII (hostile work environment); and (2) libel and slander.

**2.** *See Latino Officers Ass'n v. City of New York,* 209 F.R.D. 79, 82–86 (S.D.N.Y.2002) (certifying class).

**3.** SAC ¶¶ 269–77.

seek also back pay, benefits, and seniority, compensatory and punitive damages, and attorneys' fees.

Each of the three Article 78 Plaintiffs, an NYPD officer, was terminated by the NYPD and previously brought an Article 78 proceeding challenging his termination. The substance of each officer's claim is described below.

### A. Charles Castro

#### 1. *Article 78 Proceeding*

The Police Commissioner dismissed Castro on December 30, 1998 on the recommendation of an Assistant Deputy Trial Commissioner, who found that he had made false statements at an official interview relating to a harassment complaint by a civilian who subsequently was murdered by her former boyfriend, a police officer.[4]

Plaintiff Castro brought an Article 78 proceeding in April 1999 to challenge his dismissal.[5] His petition alleged that: (1) the decisions of the Police Commissioner and Assistant Deputy Police Commissioner were not supported by substantial evidence; (2) the report of the Assistant Deputy Police Commissioner, as adopted by the Police Commissioner, was not supported by substantial evidence; (3) the penalty of dismissal was an abuse of discretion; (4) the divestiture of Castro's pension was arbitrary and capricious; and (5) the divestiture of the pension deprived Castro of due process of law.[6]

Castro claimed also that his dismissal from the NYPD may have been related to, or in retaliation for, his membership and active participation in the Latino Officers Association ("LOA"), a fraternal organization whose members are current and former Latino and African–American NYPD officers and civilian employees, and that his dismissal reflected disparate treatment in the application of NYPD disciplinary rules and procedures. Castro's petition asserted that he is a "vocal and active member of the Latino Officers Association" and that he had brought "numerous charges of Discrimination and unfair treatment against supervisory personnel of the [P]olice Department."[7] Furthermore, Castro alleged in his supporting affidavit that "[t]here have been numerous instances where white officers have been similarly charged by the Police Department, however they were not terminated, and are currently receiving all the benefits afforded to them."[8] He then listed the names of ten white officers who allegedly fit this description.[9] Plaintiff cross-referenced this allegation in his verified petition.[10]

The Appellate Division, First Department,[11] denied Castro's Article 78 petition, finding that the Commissioner's dismissal of Castro was supported by substantial evidence and that the penalty of dismissal did not "shock our sense of fairness."[12] The court did not explicitly address Castro's other claims.

---

4. Def. Ex. 3, Report and Recommendation at 59–76.

5. Def. Ex. 3, Final Order of Dismissal at 216.

6. Def. Ex. 3, Verified Petition, ¶¶ 27–35, at 15–16.

7. *Id.* at 14.

8. Def. Ex. 3, Affidavit in Support of Petition, ¶ 20, at 28.

9. *Id.*

10. Def. Ex. 3, Verified Petition, ¶ 25, at 14.

11. Castro's petition was transferred to the Appellate Division pursuant to CPLR § 7804(g) because it involved the issue of whether the challenged determinations were supported by substantial evidence. Def. Ex. 3, Order of Transfer, at 2.

12. *Castro v. Safir*, 277 A.D.2d 123, 123, 717 N.Y.S.2d 44, 45 (1st Dep't 2000).

### 2. Current Allegations

Castro asserts the causes of action previously described.[13] He claims that he was threatened and retaliated against for engaging in protected activities, including filing complaints with the NYPD and the Equal Employment Opportunity Commission ("EEOC").[14] He alleges further that his termination was the result of disparate treatment in the application of disciplinary rules and processes to Latino and African–American officers. He asserts that "non-Latino officers who have made clearly false and misleading statements during [official] interrogations have been allowed to retire with full pensions, or received lesser penalties than termination, while memory lapses comparable to [his] have not resulted in discipline." [15]

Castro seeks the same relief sought by the class, including declaratory and injunctive relief to remedy the alleged discrimination wrought by the NYPD on Latino and African–American officers, reinstatement with back pay and seniority, compensatory damages, punitive damages, and attorneys' fees.[16]

### B. Reuben Malave

### 1. Article 78 Proceeding

Malave was arrested in March 1997 for soliciting sex from two undercover female police officers posing as prostitutes,[17] an allegation that later resulted in his being brought up on departmental charges. An Assistant Deputy Trial Commissioner found him guilty and of being unfit for duty due to intoxication.[18] The Police Commissioner terminated him on October 16, 1998.[19]

Malave brought an Article 78 petition on February 8, 1999 to challenge his dismissal.[20] The petition contended that the Assistant Deputy Commissioner's findings and recommendations were not supported by substantial evidence, were against the weight of the evidence, and were arbitrary and capricious.[21] Malave contended also that the Police Commissioner's acceptance of the hearing officer's findings and recommendation was, "given the alleged misconduct, the petitioner's past work performance and respondent's regular practice, arbitrary, capricious, an abuse of discretion, contrary to law and public policy and shocking to the conscience." [22]

The Appellate Division, First Department,[23] unanimously denied Malave's petition, finding that his dismissal was supported by substantial evidence.[24] It stated also that the penalty of dismissal was not "so disproportionate to petitioner's offenses as to shock our sense of fairness." [25]

---

13. *See supra* note 1 and corresponding text.

14. SAC ¶¶ 95–97.

15. *Id.* ¶ 99.

16. *Id.* ¶¶ 269–77.

17. Def. Ex. 16, Report and Recommendation, at 253–69.

18. *Id.*

19. Def. Ex. 16, Final Order of Dismissal, at 29.

20. Def. Ex. 16, Verified Petition, at 6–10.

21. *Id.* ¶ 8.

22. Def. Ex. 16, Verified Petition, ¶ 10 at 8.

23. Malave's petition too was transferred to the Appellate Division pursuant to CPLR § 7804(g) because it involved the issue of whether the challenged determinations were supported by substantial evidence. Def. Ex. 16, Order of Transfer, at 3.

24. *Malave v. Safir*, 270 A.D.2d 72, 72, 704 N.Y.S.2d 244, 244–45 (1st Dep't 2000).

25. *Malave*, 270 A.D.2d at 73, 704 N.Y.S.2d at 245.

## 2. Current Allegations

Malave asserts the same claims and seeks the same relief as all other plaintiffs.[26] In particular, he alleges that "many similarly situated white officers have engaged in far more egregious conduct without being terminated, and have in fact remained on the force and received lesser penalties or have been permitted to resign with full pension." [27]

## C. Fernando Sanchez

### 1. Article 78 Proceeding

The events leading up to Sanchez's dismissal were as follows: The NYPD brought administrative charges against Sanchez after a September 10, 1996 incident in which, while off-duty, he was stopped by two undercover Internal Affairs Bureau ("IAB") officers who were staking out the house of Sanchez's brother.[28] Sanchez refused to comply with an order to surrender his firearm and was found to be in possession of a bogus police shield.[29] On July 14, 1997, the Police Commissioner adopted the report and recommendation of the disciplinary hearing officer who adjudicated the charges against Sanchez and dismissed Sanchez from the NYPD, holding the termination in abeyance for a probationary period of one year, commencing August 5, 1997.[30]

During the term of his probation, administrative charges were brought against Sanchez for comments he made to an Assistant District Attorney and a superior officer following the sentencing of his brother for insurance fraud.[31] A third charge for engaging in conduct prejudicial to the good order, efficiency or discipline of the NYPD was brought against him based on a letter he sent to the New York County District Attorney in which he complained about the course and outcome of his brother's trial.[32] Sanchez then was terminated without a hearing on October 7, 1998.[33]

Sanchez brought an Article 78 petition in February 1999 challenging his dismissal from the NYPD.[34] He alleged that: (1) the police commissioner violated his rights under New York Unconsolidated Law § 891 and his state and federal rights to due process of law by terminating him without

---

**26.** *See supra* note 1 and corresponding text.

**27.** SAC ¶ 85.

**28.** Def. Ex. 6, Sanchez Article 78 Order at 1–2.

**29.** Def. Ex. 7, Disposition of Charges.

Shortly after this incident, Sanchez brought a federal lawsuit unsuccessfully challenging on Fourth Amendment grounds his detention by members of the NYPD's IAB during this encounter. Pl. Mem. 31. That lawsuit was filed over two years before the termination at issue in this class action and is unrelated to the claim at issue on this motion, namely, whether Sanchez's race was a motivating factor in defendants' decision to terminate him. It therefore has no preclusive effect in this suit.

**30.** Def. Ex. 7, Disposition of Charges; Def. Ex. 9, Report and Recommendation of Assistant Deputy Commissioner of Trials. On Oc-

tober 15, 1997, Sanchez signed an agreement memorializing the terms of his dismissal probation whereby he agreed that, pursuant to NYC Administrative Code, Section 14–115(d), the Police Commissioner could dismiss him at any time during the one year probationary period without any further proceedings. Def. Ex. 9, Memorandum re: Dismissal Probation. Sanchez further acknowledged that his one year probationary period would be extended by any periods that he was not on regular duty, such as on suspension, modified assignment or restricted duty. *Id.*

**31.** Def. Ex. 6, Article 78 Order at 4–5.

**32.** Def. Ex. 9, Article 78 Answer Exhibits G and J.

**33.** Def. Ex. 6, Article 78 Order at 5.

**34.** Def. Ex. 7, Notice of Petition.

a hearing; and (2) the decision to terminate him was arbitrary and capricious and violated his state and federal rights to freedom of speech, as he was terminated because of statements he allegedly made about his brother's prosecution.[35]

On September 27, 1999, the Article 78 court denied Sanchez's petition.[36] The court found that Sanchez was a probationary employee when he was terminated and thus could be dismissed without a hearing.[37] Observing that "[j]udicial review of the termination of a probationary employee is limited to inquiry into whether the termination was arbitrary, capricious or otherwise made in bad faith," the court found that the record demonstrated a rational basis for Sanchez's dismissal and that his termination was neither arbitrary, capricious, nor in bad faith.[38] The court noted further that "[t]he record as presented to this court demonstrates that the petitioner failed to present evidence that his termination was retaliatory or discriminatory."[39]

### 2. Current Allegations

Sanchez asserts the same counts and seeks the same relief as the other class plaintiffs.[40] Specifically, he alleges that "white officers are not served with unwarranted charges, punished so severely for

relatively minor infractions, and terminated in violation of their due process rights, to the degree experienced by Sanchez and other Latino officers."[41]

### Discussion

### A. Summary Judgment Standard

Summary judgment may be granted "only when the moving party demonstrates that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"[42] The Court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'"[43]

### B. Rooker–Feldman Doctrine

■ The *Rooker–Feldman* doctrine embodies the principle that "among federal courts, only the Supreme Court has subject matter jurisdiction to review state court judgments."[44] Thus, a federal district court lacks jurisdiction over any claim that "directly challenges, or is 'inextricably intertwined' with, a prior state court decision."[45]

---

**35.** Def. Ex. 7, Article 78 Petition, 1–4.

**36.** Def. Ex. 6, Article 78 Order.

**37.** *Id.* at 5–6.

**38.** *Id.* at 6.

**39.** Def. Ex. 6, Article 78 Order at 6–7.

**40.** *See supra* note 1 and corresponding text.

**41.** SAC ¶ 173.

**42.** *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir. 1995) (quoting FED. R. CIV. P. 56(c)); *accord Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**43.** *Allen,* 64 F.3d at 79 (internal citation omitted) (quoting *Lund's Inc. v. Chemical Bank,* 870 F.2d 840, 844 (2d Cir.1989)).

**44.** *Johnson v. Smithsonian Inst.,* 189 F.3d 180, 185 (2d Cir.1999) (citing *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Hachamovitch v. DeBuono,* 159 F.3d 687, 693–94 (2d Cir.1998).

**45.** *Karamoko v. New York City Housing Auth.,* 170 F.Supp.2d 372, 376 (S.D.N.Y.2001) (internal quotations and internal citation omitted).

■ There is debate over the contours and even the continued vitality of the *Rooker–Feldman* doctrine [46] where there is a federal statutory grant of jurisdiction.[47] The Second Circuit has held that where "the precise claims raised in a state court proceeding are raised in the subsequent federal proceeding, *Rooker–Feldman* plainly will bar the action. On the other hand, ... where the claims were never presented in the state court proceedings and the plaintiff did not have an opportunity to present the claims in those proceedings, the claims are not 'inextricably intertwined' and therefore not barred by *Rooker–Feldman*."[48] The situation is altogether different when a plaintiff had an opportunity to raise a claim in an earlier proceeding, but failed to do so. In those circumstances, the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion.[49]

In this case, the Article 78 Plaintiffs properly could have raised before the Article 78 courts their statutory and constitutional claims that their terminations were discriminatory and retaliatory. Although Article 78 courts are courts of limited jurisdiction and may not hear a general constitutional challenge to a law or regulation,[50] they may entertain claims that the application of a rule is unconstitutional.[51]

---

**46.** *Hachamovitch*, 159 F.3d at 696 (noting debate whether doctrine "is coextensive with preclusion or extends beyond preclusionary rules"); *see also Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 199–200 (2d Cir.1996) (stating that, "at a minimum, ... subsequent litigation of [a] claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion.").

**47.** *Hachamovitch*, 159 F.3d at 696.

**48.** *Moccio*, 95 F.3d at 198–99.

**49.** *Id.* at 199–200 (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring) ("[T]he federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.")).

Some have argued that the Supreme Court's jurisprudence with respect to the preclusive effect of state court judgments and even administrative determinations in federal civil rights cases is unfair and unwise. *See, e.g.*, Marjorie A. Silver, *In Lieu of Preclusion: Reconciling Administrative Decisionmaking and Federal Civil Rights Claims*, 65 IND. L.J. 367, 379–94 (1990); *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 506, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (Blackmun, J. dissenting) ("The Court has ... constructed a rule that will serve as a trap for the unwary *pro se* or poorly represented complainant. For these complainants, their sole remedy lies in the state

administrative process."); 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4471.3 (2d ed. 2002) ("It is not apparent why an election to hazard the narrow channels of judicial review should foreclose a claimant who could have steered for the safer port of independent federal decision."). Such considerations are not appropriate for this Court, which is duty-bound to apply the governing law.

**50.** The only questions that may be raised in an Article 78 proceeding are:

"1. whether the body or officer failed to perform a duty enjoined upon it by law; or 2. whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or 3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed; or 4. whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to a direction by law is, on the entire record, supported by substantial evidence." N.Y. C.P.L.R. 7803.

**51.** *See Guido v. New York State Teachers' Ret. Sys.*, 94 N.Y.2d 64, 72, 699 N.Y.S.2d 697, 702, 721 N.E.2d 947 (1999) (Article 78 court considered petitioner's federal equal protection challenge to determination of State Teachers' Retirement System regarding pension benefits); *Antonsen v. Ward*, 77 N.Y.2d 506, 515,

Indeed, the Article 78 courts could have upset the terminations of the Article 78 Plaintiffs if they had demonstrated that their terminations were discriminatory or retaliatory.[52] Thus, the Court must determine whether the Article 78 judgments are entitled to preclusive effect.

Under the Full Faith and Credit Clause's federal implementing statute, "judicial proceedings of any court of any [ ] State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken."[53] Accordingly, the Article 78 judgments command the same preclusive effect in this Court as would be given by the courts of New York.[54]

One of the leading cases establishing the proper application of Section 1738 in the civil rights context is *Kremer v. Chemical Construction Corp.*[55] The case involved a claim of national origin and religious discrimination by an engineer who, along with a number of other employees, was laid off from his position.[56] Some of the other employees later were rehired, but Kremer was not, despite numerous applications.[57] The New York State Division of Human Rights ("NYSDHR") found that there was no probable cause to believe that Kremer's employer had engaged in the discriminatory practices Kremer alleged.[58] The NYSDHR Appeals Board upheld this determination.[59] Kremer filed an Article 78 petition seeking review of the NYSDHR administrative decision, and the state court upheld the Appeal Board's order.[60] Kremer then brought a Title VII action in federal court alleging discrimination on the basis of national origin and religion.[61]

Although various special features of Title VII might have led the Supreme Court to allow Kremer to relitigate his claims free from the preclusive effects of the Arti-

569 N.Y.S.2d 328, 332, 571 N.E.2d 636 (1991) (probationary police office alleged in Article 78 petition that he was terminated from NYPD in violation of NYSHRL); *Doe v. Coughlin,* 71 N.Y.2d 48, 52, 523 N.Y.S.2d 782, 785, 518 N.E.2d 536 (1987) (Article 78 court considered and rejected prisoner's constitutional and statutory challenges to respondents' refusal to allow him to participate in conjugal visit program because he had AIDS); *Moccio,* 95 F.3d at 199 ("A petitioner [in an Article 78 proceeding] ... may raise a claim that the administrative application of a rule to him is unconstitutional.").

**52.** *See Parker v. Blauvelt Volunteer Fire Co.,* 93 N.Y.2d 343, 350, 690 N.Y.S.2d 478, 483, 712 N.E.2d 647 (1999) (claims of constitutional rights violations were before Article 78 court to be considered as grounds for annulment of plaintiff's dismissal from Fire Department); *Rameau v. New York State Dep't of Health,* 741 F.Supp. 68, 71 (S.D.N.Y.1990) ("Had the [Article 78] court found that the allegations of discrimination were supported by the facts it could not have found that plaintiff was properly discharged.").

**53.** U.S. CONST. art. IV; 28 U.S.C. § 1738.

**54.** *See Migra v. Warren City Sch. Dist.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."); *Conopco, Inc. v. Roll Int'l,* 231 F.3d 82, 87 (2d Cir.2000) (same); *Davidson v. Capuano,* 792 F.2d 275, 277–78 (2d Cir.1986) (same); *see also* 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4469 (2d ed.2002).

**55.** 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

**56.** *Id.* at 463, 102 S.Ct. 1883.

**57.** *Id.*

**58.** *Id.* at 464, 102 S.Ct. 1883.

**59.** *Id.*

**60.** *Id.*

**61.** *Id.* at 465.

cle 78 judgment,[62] the Court held that because Title VII does not create an exception to the requirement in 28 U.S.C. § 1738 that a federal court give "the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from the judgments emerged," Kremer's claims were barred because New York courts would accord preclusive effect to the Article 78 judgment.[63] Thus, the Court turns to the question whether the Article 78 judgments would be given preclusive effect in this case by the New York courts.

*1. Claim Preclusion*

 Under New York law, the doctrine of claim preclusion bars litigation of claims or defenses that were or could have been raised in a prior proceeding where

that prior proceeding resulted in a final judgment on the merits and arose out of the same factual grouping as the later claim, even where the later claim is based on different legal theories or seeks dissimilar or additional relief.[64] As stated previously, the Article 78 plaintiffs have alleged no claims in this class action that the Article 78 courts could not have heard.[65] There remains, however, one further consideration. The general rule of claim preclusion does not apply:

> "where the plaintiff 'was unable to ... seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain ... multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action ... to seek that remedy or form of relief.' "[66]

---

**62.** For example, Title VII has a "complex statutory scheme that frequently requires that employment discrimination claims be presented to state or local agencies before the Equal Employment Opportunity Commission can act, and that merely requires the Commission to accord 'substantial weight' to any final findings made in the state proceedings." 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4471.2. at 273 (2d ed.2002)

**63.** *Kremer*, 456 U.S. at 485, 102 S.Ct. 1883. In a vigorous dissent, Justice Blackmun protested that the limited scope of judicial review under Article 78 did not warrant preclusive effect: "[T]he Appellate Division made no finding one way or the other concerning the *merits* of petitioner's discrimination claim." *Id.* at 492, 102 S.Ct. 1883 (Blackmun, J. dissenting) (emphasis in original). Thus, Justice Blackmun argued, the majority gave preclusive effect not to the "state *court* decision ... [but indeed to] the state *agency's* decision...." *Id.* at 492–93, 102 S.Ct. 1883 (emphasis in original). Further, he warned that the Court's ruling would discourage parties from seeking state judicial review, and, in some cases, from availing themselves of state proceedings at all. *Id.* at 504–505, 102 S.Ct. 1883.

**64.** *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir.1997) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24(1) (1982)) (applying New York law); *see also Parker*, 93 N.Y.2d at 347–48, 690 N.Y.S.2d at 481; *Smith v. Russell Sage Coll.*, 54 N.Y.2d 185, 192–93, 445 N.Y.S.2d 68, 71, 429 N.E.2d 746 (1981); *Reilly v. Reid*, 45 N.Y.2d 24, 29–30, 407 N.Y.S.2d 645, 648–49, 379 N.E.2d 172 (1978) (adopting Restatement approach to res judicata); *Newton Garment Carriers, Inc. v. Consol. Carriers Corp.*, 250 A.D.2d 482, 482–83, 673 N.Y.S.2d 631, 632 (1st Dep't 1998) ("claim preclusion[] forecloses a party from ... raising issues or defenses that might have been litigated in the first suit") (citing *Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 485, 414 N.Y.S.2d 308, 310–11, 386 N.E.2d 1328 (1979)).

It is well-established that Article 78 determinations are final judgments on the merits. *See, e.g., Parker*, 93 N.Y.2d at 347, 690 N.Y.S.2d at 481, 712 N.E.2d 647.

**65.** *See supra* notes 50–51 and corresponding text.

**66.** *Parker*, 93 N.Y.2d at 349, 690 N.Y.S.2d at 482, 712 N.E.2d 647 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(c) (1982)); *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(c) cmt. (c) (noting that the general

■ In this case, the plaintiff class seeks the following relief for their allegedly wrongful terminations: declaratory and injunctive relief, back pay, seniority, benefits, compensatory damages, punitive damages, costs, and attorneys' fees.[67] The relief available in an Article 78 proceeding is limited as follows:

"If the [Article 78] proceeding was brought to review a determination, the judgment may annul or confirm the determination in whole or in part, or modify it, and may direct or prohibit specified action by the respondent. Any restitution or damages granted to the petitioner must be incidental to the primary relief sought by the petitioner,

and must be such as he might otherwise recover on the same set of facts in a separate action or proceeding suable in the supreme court against the same body or officer in its or his official capacity."[68]

Accordingly, compensatory damages are not available to an Article 78 petitioner who primarily seeks reinstatement, as was the case for each of the Article 78 Plaintiffs in the state proceedings.[69] Nor are punitive damages.[70] An Article 78 court, however, may award reinstatement and back pay,[71] injunctive and declaratory relief,[72] and attorney's fees.[73] In these circumstances, there is an incomplete overlap between the relief available to the plain-

---

rule of claim preclusion "assum[es] that the jurisdiction in which the first judgment was rendered was one which put no formal barriers in the way of a litigant's presenting to a court in one action the entire claim including any theories of recovery or demands for relief that might have been available to him under applicable law," and stating further that "[w]hen such formal barriers in fact exist[ ] and [are] operative against a plaintiff in the first action, it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first."); *Leather v. Eyck*, 180 F.3d 420, 425 (2d Cir.1999) (applying New York law); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994) (claim preclusion inapplicable under New York law where " 'the initial forum did not have the power to award the full measure of relief sought in the later litigation' ") (quoting *Davidson*, 792 F.2d at 278); *Heimbach v. Chu*, 744 F.2d 11, 14 (2d Cir.1984) (application of claim preclusion depends on whether "court in which the first action was brought would have been willing and able to consider the theory that is being advanced in the second action.").

67. SAC ¶¶ 269–77.

68. C.P.L.R. 7806.

69. *Parker*, 93 N.Y.2d at 348, 690 N.Y.S.2d at 482, 712 N.E.2d 647 (compensatory damages for pain and suffering and punitive damages are not "incidental" damages in an Article 78 proceeding seeking reinstatement and back pay because damages claims do not seek "restoration of any economic benefits derivable

from [petitioner's] status as a member of the ... [f]ire [d]epartment."); *see also Leisner v. Bahou*, 97 A.D.2d 860, 860–61, 469 N.Y.S.2d 255, 257–58 (3d Dep't 1983) (money damages not incidental to primary relief sought in Article 78). The Article 78 court that reviewed Castro's claims failed to mention that compensatory damages were not recoverable in that proceeding.

70. *Parker*, 93 N.Y.2d at 348, 690 N.Y.S.2d at 482, 712 N.E.2d 647.

71. *See id.*, 93 N.Y.2d at 348, 690 N.Y.S.2d at 482, 712 N.E.2d 647 (reinstatement and back pay may be awarded in Article 78 proceeding); *Vega v. SUNY Bd. of Trustees*, 67 F.Supp.2d 324, 334 (S.D.N.Y.1999) (finding res judicata bars relitigation of claims in federal proceeding for reinstatement, back pay and "accrued rights and privileges," but not compensatory and punitive damages, based on prior Article 78).

72. N.Y. C.P.L.R. 7806 ("If the proceeding was brought to review a determination, the judgment may ... direct or prohibit specified action by the respondent."); *see also* N.Y. C.P.L.R. 7806, Practice Commentaries ("quasi-injunctive order[s]" are possible under Article 78); *O'Reilly v. Grumet*, 308 N.Y. 351, 358, 126 N.E.2d 275, 278–79 (1955) (injunctive relief possible under Article 78); *Policemen's Benevolent Ass'n v. Bd. of Trustees*, 21 A.D.2d 693, 694, 250 N.Y.S.2d 523, 526 (1964) (injunctive relief seeking to enjoin town board from making certain appointments pursuant to allegedly invalid local law

tiffs in their Article 78 proceedings and in this case. In consequence, the doctrine of claim preclusion does not apply here.[74]

### 2. Issue Preclusion

Although the Article 78 Plaintiffs' claims that their terminations were discriminatory and retaliatory are not barred by claim preclusion, this Court must consider whether issue preclusion bars relitigation of any issues decided previously in the Article 78 proceedings.

■ As noted, this Court is obliged to give the same issue preclusive effect to the Article 78 proceedings as would be given by the courts of New York.[75] Under New York law, issue preclusion "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." [76] Furthermore, the party against whom the doctrine is asserted must have had a full and fair opportunity to litigate the issue in the first proceeding.[77]

■ Issue preclusion will apply only if it is "quite clear" that the elements have been met so that a party is not "'precluded from obtaining at least one full hearing on his or her claim.'" [78] The burden of showing that the issues are identical and necessarily were decided in the prior action rests with the party seeking to apply issue preclusion while the burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues rests with the party opposing its application.[79]

■ The Article 78 Plaintiffs do not contest that Article 78 courts are procedurally fair forums in which to litigate a variety of claims.[80] Nevertheless, they ar-

---

available in Article 78); DAVID D. SEIGEL, NEW YORK PRACTICE § 570 (3d ed. 1999) ("[I]t is reasonably clear today that even outright injunctive relief, if appropriate, is available in an Article 78 proceeding.") (citing *Policemen's Benevolent Ass'n*, 21 A.D.2d at 694, 250 N.Y.S.2d at 526). *But see Lewis v. Mandeville*, 201 Misc. 120, 122, 107 N.Y.S.2d 865, 867 (1951) (permanent injunction could not be granted in an Article 78 proceeding for an order directing town supervisor and members of town board to discontinue specified practices allegedly in violation of constitution).

**73.** *See Johnson v. Blum*, 58 N.Y.2d 454, 457–58, 461 N.Y.S.2d 782, 783–84, 448 N.E.2d 449 (1983) (attorney's fees under federal statute for civil rights violation held to be recoverable in Article 78 proceeding); *Antonsen v. Ward*, 943 F.2d 198, 201–202 (2d Cir.1991) (claim for attorney's fees precluded in federal action because could have been recovered in Article 78).

**74.** *See, e.g., Sharp v. Abate*, 887 F.Supp. 695, 700 (S.D.N.Y.1995).

**75.** 28 U.S.C. § 1738; *Kremer*, 456 U.S. at 485, 102 S.Ct. 1883.

**76.** *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487 (1984).

**77.** *Id.*, 62 N.Y.2d at 501, 478 N.Y.S.2d at 826, 467 N.E.2d 487.

**78.** *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir.1995) (quoting *Gramatan Home Investors Corp.*, 46 N.Y.2d at 485, 414 N.Y.S.2d at 311, 386 N.E.2d 1328).

**79.** *Kulak v. City of New York*, 88 F.3d 63, 72 (2d Cir.1996) (applying New York law).

**80.** Pl. Mem. 26. And indeed, any such argument would be meritless. Among the relevant factors to consider in deciding whether a party had a full and fair opportunity to litigate are: "the size of the claim in the prior proceeding, the forum of the prior proceeding, the extent of the prior litigation, and the availability of the evidence now that was not available at the time of the prior proceeding." *Moccio*, 95 F.3d at 202 (citing *Schwartz v. Public Adm'r*, 24 N.Y.2d 65, 72, 298 N.Y.S.2d 955, 961, 246 N.E.2d 725 (1969)). All of the Article 78 Plaintiffs participated in the state court proceedings with the assistance of

gue that issue preclusion should not apply because of the "significant statistical, comparative and anecdotal evidence" that has come to light that was not available at the time of the Article 78 proceedings.[81] They allege that this statistical information tends to show that the NYPD discriminates against racial minorities.[82]

Much of the data that underlies Plaintiffs' statistical arguments in this case was available when the Article 78 Plaintiffs brought their proceedings.[83] While their counsel elected not to attempt the broad-based attack on the NYPD disciplinary process that now is before this Court, they readily could have done so. Thus, this case is distinguishable from *Khandhar v. Elfenbein*, on which the Article 78 Plaintiffs rely, in which the Second Circuit found that plaintiff was not estopped, based on a prior arbitration award, from pursuing a damages claim against his treating physicians, where plaintiff was not aware of the extent of his injuries at the time of the arbitration.[84] Thus, the Article 78 Plaintiffs have not sustained their burden of showing that they did not have a full and fair opportunity to litigate their claims before the Article 78 courts. The Court now turns to the issues actually and necessarily decided in the prior proceedings.

#### a. Reuben Malave

The Article 78 court found that Malave's dismissal was supported by substantial evidence and upheld the penalty of dismissal. It found that the finding of police department officials that Malave patronized a prostitute was supported by substantial evidence.[85] The court found also that Malave's "own testimony provided substantial evidence in support of the charge that he was unfit for duty by reason of intoxication." [86] To the extent Malave seeks to challenge the facts and circumstances of the misconduct giving rise to his dismissal, he is collaterally estopped from doing so, as determination of these factual issues was essential to the Article 78 court's resolution of Malave's petition. This, however, is not necessarily dispositive of his individual claim.

Malave's wrongful termination claims under Title VII (disparate disciplinary treatment and retaliation), Section 1981 (interference with right to contract), Section 1983 (deprivation of various constitutional rights under color of state law), Section 1985(3) (conspiracy to deprive equal

counsel and had the opportunity to testify and cross-examine witnesses. *E.g., Castro,* 277 A.D.2d at 123, 717 N.Y.S.2d at 45; Def. Ex. 3, Record on Transfer; *see Aguirre v. New York State Police,* 156 F.Supp.2d 305, 314 (S.D.N.Y.2001) (citing *Genova v. Town of Southampton,* 776 F.2d 1560, 1561 (2d Cir. 1985)). Although size of the claim is not relevant in this instance, the parties certainly had the incentive to, and did litigate vigorously the propriety of their terminations. These factors weigh in favor of finding that the Article 78 Plaintiffs had a full and fair opportunity to litigate their claims.

81. Pl. Mem. 26–27. *See Schwartz,* 24 N.Y.2d at 72, 298 N.Y.S.2d at 961; *Giakoumelos v. Coughlin,* 88 F.3d 56, 62 (2d Cir.1996) ("The parties agree that the discovery of significant new evidence would, under New York law,

defeat the application of collateral estoppel.") (citing *Khandhar v. Elfenbein,* 943 F.2d 244, 249 (2d Cir.1991)).

82. Pl. Mem. 14–16, 29.

83. Def. Reply Mem. 9 (citing release of NYPD Disciplinary Review Task Force Statistical Study in March 1998).

84. *Khandhar,* 943 F.2d at 248–49. Although not made explicit, the *Khandhar* court presumably found also that plaintiff did not have reason to know of the full extent of his injuries at the earlier proceeding.

85. *Malave,* 270 A.D.2d at 72, 704 N.Y.S.2d at 245.

86. *Id.*

protection of the laws or equal privileges and immunities under the laws), and analogous provisions of the NYSHRL and NYCHRL likely will hinge on whether race (or some other impermissible characteristic) was a "motivating factor" in the NYPD's decision to terminate him [87] and, if so, whether the NYPD would have terminated him even in its absence.[88] A finding that the decision to terminate was supported by substantial evidence—essentially a finding that it was rational [89]—does not lead inexorably to the conclusion that race was not a motivating factor in the NYPD's decision to terminate him.[90] Similarly, the court's determination that the penalty of termination did not "shock the conscience" essentially means that there was some rational basis for the termination, but does not preclude the possibility that race was a factor in determining the penalty.[91] It is possible that race motivated defendants' decisions to terminate Malave, even though defendants had another articulated basis for the termination that the Article 78 court found to be rational.[92]

Likewise, to the extent Malave raises claims in this action for First Amend-

---

**87.** *See Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 118 (2d Cir.2000) ("In an employment discrimination or retaliation case, the job of the jury is simply to decide whether an impermissible factor was a motivating factor in the adverse employment action."); *Fields v. New York State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 121 (2d Cir.1997).

The Court assumes that the Article 78 Plaintiffs will be able to satisfy *McDonnell Douglas's* minimal requirements of a prima facie case and that the defendants will assert that they had legitimate, nondiscriminatory reasons for terminating each of the Article 78 Plaintiffs. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir.2000). In this circumstance, the jury would be asked to decide whether the Article 78 Plaintiffs had established that race was a motivating factor in defendants' decisions. *Cabrera v. Jakabovitz*, 24 F.3d 372, 382 (2d Cir.1994) ("[I]f the case requires submission to the jury, all the jury needs to be told about the plaintiff's burden of proof is that the burden of persuasion as to discrimination is on the plaintiff.").

**88.** *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244–45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

**89.** *Moccio*, 95 F.3d at 210 n. 2 (stating that whether administration decision was rational is gravamen of Article 78 mandamus to review and Article 78 certiorari proceedings).

**90.** The discussion in the text presupposes that this is an "ordinary" disparate treatment discrimination case. In fact, plaintiffs bring not only such disparate treatment claims, but assert a pattern and practice of discrimination by the NYPD. To the extent that plaintiffs prevail on their pattern and practice contention, the burdens of proof with respect to the claims of individual plaintiffs would be altered. *See generally Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 159 (2d Cir.2001), *cert. denied*, 535 U.S. 951, 122 S.Ct. 1349, 152 L.Ed.2d 251 (2002); *Latino Officers Ass'n*, 209 F.R.D. at 86. The parties have not addressed how and to what extent the Court's finding of issue preclusion would play out in that event, so there is no occasion for the Court to do so now. It does not appear, however, the Article 78 Plaintiffs could avoid the issue preclusive effect of the prior findings even in that event.

**91.** *Id.* at 201 (upholding termination against Equal Protection challenge where Article 78 court's statement that termination " 'is not so disproportionate to these offenses as to be shocking to one's sense of fairness' " establishes that there was a rational relationship between the decision to terminate and the actions in which employee engaged).

**92.** *See Aguirre*, 156 F.Supp.2d at 315 (S.D.N.Y.2001) ("A finding of misconduct does not lead inexorably to a finding of no race discrimination."); *Bracey v. Safir*, No. 98 Civ. 6565(SAS), 1999 WL 672564, at *5 (S.D.N.Y. Aug.26, 1999) (Article 78 court determination that probationary employee had failed to prove that he was terminated in bad faith "cannot be construed as a holding that the termination was not done for any constitutionally impermissible reason").

ment retaliation under Section 1983, this claim is not barred. A necessary element of this claim is that "the defendants' conduct was motivated by or substantially caused by [plaintiff's] exercise of free speech." [93] The Article 78 court's finding that Malave's termination was rational is not inconsistent with a finding that it was motivated in some part or caused by his exercise of First Amendment rights.

This scenario is distinguishable from cases in which plaintiffs specifically raised and courts necessarily decided issues in a prior proceeding that were dispositive of causes of action in a later proceeding. For example, in *Moccio*, the Second Circuit rejected plaintiff's Section 1983 due process and equal protection claims, finding that he previously had litigated issues dispositive of these causes of action.[94] An Article 78 court previously had held that Moccio's termination from state employ: (1) was not "arbitrary, capricious or contrary to law;" and (2) was not a penalty that "shock[ed] the conscience." [95] In his subsequent federal lawsuit, Moccio claimed that: (1) his termination violated due process protections because it was "arbitrary and capricious;" and (2) the penalty of termination violated the equal protection clause of the Fourteenth Amendment because the penalty was harsher than that doled out to other similarly situated employees.[96]

The Circuit found that Moccio' federal due process claim was precluded because the "the issue in the Article 78 proceeding—whether the OCA acted in an arbitrary and capricious fashion—is the precise issue that Moccio seeks to raise in his instant due process claim." [97] As to plaintiff's equal protection claim, the Second Circuit held that the Article 78 court's finding that Moccio's termination did not "shock the conscience" satisfied the deferential rational basis standard at issue in his claim. In other words, the Circuit found that the Appellate Divisions' finding "states nothing more than that there is a rational relationship between the [employer's] decision to terminate Moccio and the actions in which he was found by the hearing officer to have engaged." [98]

Unlike the situation in *Moccio*, Malave neither raised [99] nor did the Article 78 court decide, whether his termination was discriminatory or retaliatory. Thus, Malave may move forward with all of his wrongful termination claims, except that he is precluded from relitigating the factual issues that were determined against him—essentially, that he patronized a prostitute and was unfit for duty because he was intoxicated.

b. Charles Castro

The Article 78 court found that Castro's dismissal was supported by substantial evidence and upheld the penalty of dismissal.[100] The court did not address explicitly

**93.** *Bernheim v. Litt,* 79 F.3d 318, 324 (2d Cir.1996).

**94.** *Moccio,* 95 F.3d at 200–202.

**95.** *Id.* at 200–201.

**96.** *Id.*

**97.** *Id.* at 201.

**98.** *Id.; accord Wolff v. City of New York Fin. Serv. Agency,* 939 F.Supp. 258, 265 (S.D.N.Y. 1996) (holding plaintiff collaterally estopped from litigating in Title VII action claims pre-

viously litigated in Article 78 that his termination was due to religious and gender-based prejudices).

**99.** The Court does not construe Malave's reference in his Verified Petition to "respondent's regular practice" to raise a claim of disparate treatment. Def. Ex. 16, Verified Pet., ¶ 10 at 8.

**100.** *Castro,* 277 A.D.2d at 123, 717 N.Y.S.2d at 45.

Castro's claim that his dismissal may have been related to, or in retaliation for, his membership and active participation in the LOA. In support of its finding that Castro's dismissal was supported by substantial evidence, the court found that substantial evidence supported the respondents' finding that petitioner deliberately lied in his first official departmental interview to protect a fellow officer, not that he was afflicted by faulty memory.[101] To the extent Castro seeks to relitigate the facts and circumstances surrounding the misconduct giving rise to his termination, he is barred by issue preclusion, as these factual findings were essential to the state court's decision.[102]

██ Unlike plaintiff Malave, Castro raised in his Article 78 proceeding the arguments that his termination was retaliatory and discriminatory.[103] The state court's determination that the police commissioner's decision to terminate him was supported by substantial evidence and that the penalty of dismissal did not "shock our sense of fairness," therefore necessarily implied rejection of Castro's claim that his termination was discriminatory and retaliatory. After all, had the termination been discriminatory or retaliatory, the court could not have found it to have been rational, which is the essence of a finding of support by substantial evidence.[104] The fact that the state court never expressly rejected Castro's claims that his dismissal was discriminatory and retaliatory does not alter this analysis.[105] By contrast, the state court's finding that Malave's dismissal was rational did not preclude the possibility that prohibited discrimination was a motivating factor in his termination.

As the Article 78 judgment in Castro's case necessarily rests on findings that Castro was a victim neither of discrimination nor retaliation and that there was a rational basis for the finding that the charges against him were true, Castro is barred from relitigating the wrongful termination claims.

c. Fernando Sanchez

██ The issue presented to the Article 78 court in Sanchez's case was whether Sanchez's termination was improper as a matter of state law. Under New York law, a probationary employee may be dismissed without either a hearing or a statement of reasons, provided the dismissal was not arbitrary or capricious, in bad faith, or in violation of public policy.[106]

101. *Id.*

102. See *Parker*, 93 N.Y.2d at 350, 690 N.Y.S.2d at 483, 712 N.E.2d 647.

103. See *supra* notes 7–10 and corresponding text.

104. See *Davis v. City of New York*, No. 00 Civ. 4309(SAS), 2000 WL 1877045, at *3 (S.D.N.Y. Dec.27, 2000) (where police officer in Article 78 unsuccessfully challenged denial of accidental disability pension on ground that another officer was granted accidental pension for same accident, collateral estoppel barred subsequent federal action alleging denial was based on racial and national origin discrimination); *Jessen v. Cavanaugh*, 9 F.Supp.2d 393, 397 (S.D.N.Y.1998) (First Amendment retaliation claim barred by collateral estoppel where decision in Article 78 proceeding rejected argument that challenged employment decision was made in bad faith); *Beharry v. M.T.A. New York City Transit Auth.*, No. 96–CV–1203 (FB), 1999 WL 151671, at *8 (E.D.N.Y. March 17, 1999) (Article 78 court's determination that dismissal of plaintiff was "'rational'" necessarily determined that the urinalysis test was administered under constitutional conditions and that the appeals process comported with due process because "[t]o find otherwise would require this Court to conclude that the state court's decision upheld a constitutionally infirm (and thus inherently irrational) dismissal action.").

105. See *Rameau*, 741 F.Supp. at 72.

106. *Id.* at 71 (citing New York state cases).

The Article 78 court made two findings that Sanchez: (1) could be terminated without a hearing because he was a probationary employee; and (2) failed to sustain his burden of presenting competent proof that his dismissal was for an improper reason or in bad faith.[107] Specifically, the court stated: "The record as presented to this court demonstrates that the petitioner failed to present evidence that his termination was retaliatory or discriminatory."[108]

The court's comment about petitioner's failure to present evidence that his termination was discriminatory was not responsive to any issue raised in Sanchez's Article 78 petition, which did not mention discrimination based on any impermissible characteristic. The issues of retaliation and discrimination therefore were not actually litigated and necessarily decided. Thus, he is not precluded from litigating his claims of wrongful termination due to disparate treatment.

▆▆ Sanchez, however, did raise in his petition the contention that he was terminated in retaliation for exercising his First Amendment rights.[109] Thus, the court necessarily rejected Sanchez's First Amendment retaliation claim, finding that Sanchez had failed to meet his burden of establishing by competent evidence that his termination was in bad faith or for illegal reasons. As this finding was essential to the court's decision—it was charged with determining whether Sanchez's termination was improper as a matter of state law—Sanchez is precluded from relitigat-

ing the court's finding that his dismissal was not in retaliation for his exercise of his First Amendment rights.[110]

This conclusion is not affected by the fact that the state court made an alternative finding that Sanchez properly was discharged because of his unsatisfactory performance.[111] That finding, unlike the determination that Sanchez's termination was not retaliatory, was not essential to the state court's decision because, absent discrimination, Sanchez, a probationary employee, could have been discharged for any reason or no reason as all.[112]

Accordingly, Sanchez is barred from litigating in this action the claim that his dismissal was in retaliation for his exercise of his First Amendment rights, although plaintiff may proceed with the balance of his wrongful termination claims.

*Conclusion*

For the foregoing reasons, defendants' motion for summary judgment dismissing the Article 78 Plaintiffs' wrongful termination claims is granted to the extent that:

(1) Castro's wrongful termination claim is dismissed;

(2) Malave is precluded from relitigating the issues whether he patronized a prostitute and that he was unfit for duty by reason of intoxication; and

(3) Sanchez is precluded from relitigating the issue whether his termination was in retaliation for his exercise of his First Amendment rights.

---

107. Def. Ex. 6, Article 78 Order, at 6.

108. *Id.* at 6–7.

109. Def. Ex. 7, Verified Petition, at ¶ 12.

110. *See Rameau,* 741 F.Supp. at 71–72 (in finding that probationary employee was properly discharged, Article 78 court necessarily rejected petitioner's claims that his dismissal

was based on racial and ethnic discrimination).

111. Specifically, the Article 78 court stated: "The record in fact shows that his discharge was not based upon reasons unrelated to his performance or bad faith." Def. Ex. 6, Article 78 Order, at 7.

112. *Rameau,* 741 F.Supp. at 71.

The motion is denied in all other respects.

SO ORDERED.